JOHANN LUDWIG SCHARPF et al.

v.

SOPHIE SCHARPF SCHMIDT et al.

*Opinion filed April 21, 1898.*

1. TREATIES—*where treaty admits of two constructions the most liberal is preferred.* It is the province of the judiciary to construe treaties in cases arising between individuals, and where a treaty admits of two constructions, one restrictive as to the rights that may be claimed under it and the other liberal, the latter is preferred.

2. SAME—*Illinois Alien act of 1887 is suspended by treaty between the United States and Württemberg.* The Illinois Alien act of 1887 (Laws of 1887, p. 5,) is suspended by the treaty between the United States and Württemberg during the time limited therein, which treaty was not abrogated by the absorption of the State of Württemberg in the German Empire. (Decided in *Wunderle* v. *Wunderle*, 144 Ill. 40.)

3. SAME—*alien entitled by treaty to take real estate may maintain bill for partition.* An alien who is entitled, by treaty, to take the fee in real estate which is determinable upon the non-exercise of the power of sale within a limited time, may maintain a bill for partition. (Decided in *Schultze* v. *Schultze*, 144 Ill. 290.)

4. SAME—*under treaty of Württemberg alien heir need take no step to prolong time for sale.* Under article 2 of the treaty of Württemberg, whereby aliens may take the fee to real estate and be allowed a term of two years to sell the same, "which term may be reasonably prolonged, according to circumstances," the alien need take no formal step to prolong the term, nor need such prolongation be by act of the power which established the limitation.

5. SAME—*provision of Württemberg treaty construed.* The provision, "which term may be reasonably prolonged," etc., used in article 2 of the Württemberg treaty with reference to the extension of the time within which alien heirs must sell inherited real estate, means that the courts, in passing upon their rights, may allow the alien heirs such time, in addition to the two years' limitation, as is reasonable, under the circumstances, to enable them to sell.

6. SAME—*when alien heirs will not lose title to real estate for failure to sell within two years.* Alien heirs coming within the treaty of Württemberg may partition inherited real estate though the bill is not filed until after the two years limited by the treaty for selling, where they could not sell, so as to derive substantial benefit, until after the two years allowed by statute for filing claims against their ancestor's estate, and were unable to discover all the heirs until shortly before filing the bill, or to agree to a voluntary sale.

APPEAL from the Superior Court of Cook county; the Hon. NATHANIEL C. SEARS, Judge, presiding.

JOHNSON & MORRILL, for appellants:

Under the provisions of the constitution of the United States the treaty with Württemberg is a part of the supreme law of the land, and supersedes all local statutes that contravene its provisions. Where a treaty admits of two constructions, one restrictive as to the rights that may be claimed under it and the other one liberal in its terms, the latter must be preferred. *Shanks* v. *Dupont*, 3 Pet. 242; *Hauenstein* v. *Lynham*, 100 U. S. 483; *Wunderle* v. *Wunderle*, 144 Ill. 40; *Schultze* v. *Schultze*, id. 290.

Inasmuch as the treaty provides that a reasonable time for selling the property shall be allowed, according to the circumstances in each case, it is not within the power of any State legislature or any court to make a different rule.

MORAN, KRAUS & MAYER, for appellee Sophie S. Schmidt:

The treaty in force between the United States and the kingdom of Württemberg contains the following provision: "When, on the death of any person holding real property within the territories of one party, such real property would by the laws of the land descend on a citizen or subject of the other were he not disqualified by alienage, such citizen or subject shall be allowed a term of two years to sell the same, which term may be reasonably prolonged according to circumstances, and to withdraw the proceeds thereof without molestation and exempt from all duties of detraction."

The treaty of Württemberg intends to confer on the alien heir, for the period of two years, precisely the same rights he would enjoy if he were a resident heir, imposing on him simply the obligation to sell and convey the fee to some other party capable of holding, within that

period, or such other period as the State or county shall see fit to confer upon him by prolonging the time, or by his becoming, or declaring his intention to become, a citizen. The alien heir takes a fee determinable by non-exercise of the power of sale within two years. *Kull* v. *Kull*, 37 Hun, 476.

Under the treaty of Württemberg, unless the alien heir takes some step to procure, and the State or country does some act to evidence, a prolongation of the period of two years within which he may sell the property, his rights expire with that period.

Mr. JUSTICE CARTER delivered the opinion of the court:

This was a bill for partition, filed January 27, 1897, by Johann Ludwig Scharpf, Marie Katherine Hafner and Sophie Friederike Winter, against appellees, praying for partition of lot 7, in block 1, of Herdien, Hofflund & Carlson's North Shore addition to Chicago, the same being a vacant lot on Columbia avenue, in said city, having a frontage of fifty feet and a depth of one hundred and thirty-three feet. The bill alleged that Johann Christian Scharpf, who was the owner of said lot, died intestate August 2, 1894, unmarried and childless, leaving him surviving as his only heirs-at-law the complainants and defendants to said bill. The complainants are a brother and two sisters of the deceased, and the defendants are Sophie Scharpf Schmidt, a sister, Charles H. Lellman, Jr., (grantee of Albert Scharpf, a brother,) three children of John Scharpf, another brother, and the unknown heirs and devisees of Christine Rosine Seffens, another sister. The appellants and Albert Scharpf are all aliens, and subjects of the king of Württemberg and of the emperor of Germany, and could not acquire any real estate by descent, under the provisions of the Alien Land act of 1887, but claim the right to sell the land and withdraw the proceeds thereof by virtue of article 2 of the treaty of 1844 concluded between the United States and the king

172—17

of Württemberg, which article is as follows: "Where, on the death of any person holding real property within the territories of one party, such real property would, by the laws of the land, descend on a citizen or subject of the other were he not disqualified by alienage, such citizen or subject shall be allowed a term of two years to sell the same, which term may be reasonably prolonged, according to circumstances, and to withdraw the proceeds thereof without molestation, and exempt from all duties of detraction." (Treaties and Conventions bet. U. S. etc. p. 1144.)

To bring themselves within the provisions of the treaty, appellants allege that proof of heirship was not made in the probate court of Cook county until July 24, 1896, and that by the taking of such proof they were for the first time advised as to the names of the heirs of Scharpf; that they were and have been unable to sell their interest in the lot until the expiration of the statutory period of two years after the grant of letters of administration for filing claims, which letters were granted August 22, 1894, for the reason that it was impossible to know what liens might exist against the property; that, after having ascertained the names of the heirs after proof of heirship was made, they have negotiated with them for a sale of the lot but have been unable to reach any agreement; that they have frequently applied to the heirs to join in a partition or sale, but that they have refused to do so, alleging as reasons the minority of one of the heirs and the impossibility of obtaining any conveyance from the unknown heirs and devisees of Seffens; that it has been impossible to find a purchaser for their undivided three-sevenths of the lot who was willing to pay any substantial consideration for such fractional part of the lot. Demurrers by several defendants were sustained to the bill, and the court dismissed the bill for want of equity. Complainants have appealed to this court.

That the act of 1887 is suspended by the treaty with Württemberg during the time limited in said treaty, and that such treaty was not abrogated by the absorption of that State into the German Empire and is therefore still operative, was decided by this court in *Wunderle* v. *Wunderle*, 144 Ill. 40. That in such a case as the one at bar the alien. heirs take a fee determinable by the non-exercise of the power of sale within the time limited, and have the right to maintain a suit for partition, was determined in *Schultze* v. *Schultze*, 144 Ill. 290.

The only points raised in the argument relate to the construction of article 2 of the treaty hereinbefore quoted, appellees contending that the alien heirs must take some steps to secure a prolongation of the period of two years, and that such time can be prolonged only by an act of the same department of the government which established the limitation; but it is contended, also, that even if it could be held that no affirmative act was necessary to obtain such prolongation of the period, the bill failed to show any excuse for the delay of appellants in availing themselves of rights secured to them by the treaty.

Treaties with other foreign States have been entered into by the United States, containing in almost the same language the same provisions as the treaty here under consideration, such as the treaties with Austria, Hesse, Saxony and Bavaria. (See Treaties, etc. pp. 27, 562, 981, 45.) But the peculiar provision here in controversy does not seem to have been passed on by any of the courts of last resort in this country.. We are referred to *Kull* v. *Kull*, 37 Hun, 476, and *Wieland* v. *Renner*, 65 How. Pr. 245, in which the treaty with Württemberg was under consideration. In the *Kull case* partition proceedings were brought within the two years limited, and the question here at issue did not arise. The court said in that case that the treaty imposed on the alien heir, during the two years, "the obligation to sell and convey the fee to some other party capable of holding within that period, or such

other period as the State or country shall see fit to confer upon him by prolonging the time." In the case of *Wieland* v. *Renner*, in commenting on this provision of this treaty, the court said: "The treaty does not provide how the prolongation of the time within which the property therein referred to shall be sold is to be obtained." And further: "There is nothing before me to show that such prolongation has been applied for or obtained." In that case there had been no application made to obtain the benefits of the treaty for over seven years, and the court held that the title of a purchaser could not be endangered after such a lapse of time by the probability of an application for such prolongation. In *Bollerman* v. *Blake*, 94 N. Y. 624, the question arose under the treaty with Hesse, but the alien heirs had secured an act of the legislature releasing to them all the interest of the State in the land of the deceased, within the two years limited, and this question did not arise and was not discussed. The treaty with Bavaria was under discussion in *Opel* v. *Shoup*, 69 N. W. Rep. (Iowa,) 560, but the point here involved is not touched. In *Doehrel* v. *Hillmer*, 71 N. W. Rep. (Iowa,) 204, the treaty with Prussia was considered, which fixes no time within which the land must be sold but allows a "reasonable time" for that purpose, and the court held that the laws of Iowa, giving a non-resident·alien the right to hold real property to a certain amount, provided he did certain things with it within five years, applied.

Counsel for appellees say: "It cannot be presumed that the contracting parties to the treaty in question intended that the time for a transfer by an alien should be prolonged, except by an act of the same department of government (the legislative) which established the limitation." The meaning of counsel is not altogether clear, but it is presumed that their contention is that the two governments making the treaty, and which provided for a reasonable prolongation of the term (two years) according to circumstances, intended that the determination as

to what circumstances would require a prolongation and would be a reasonable prolongation under such circumstances, should rest in the legislature of the State where the lands should have their location, for it was not, of course, intended to be asserted that the legislative department "established the limitation" contained in the treaty. Nor do we think it would be reasonable to claim that the treaty means that the question of such reasonable prolongation of time should in each particular case be made the subject of negotiation and treaty by the governments making the treaty in the first instance, nor do we understand counsel to so contend; but they do contend that, in the absence of any prolongation of time by the legislature, the limitation of two years fixed by the treaty must govern, and that when that time passed, the appellants, being aliens, no longer had any interest in the property. Counsel do not point out any way in which the General Assembly could have prolonged the limitation of two years upon the application of appellants. It may well be doubted whether the power to pass a special law on the subject exists under the constitution, and if it does, it would be but a precarious right guaranteed by this treaty to make its enjoyment depend on the action of the legislature, which might not meet until the right was barred. If it be said that the legislature could have passed a general law on the subject, conforming to the treaty, we are unable to see what additional force would thereby have been given to the treaty. As it stands, the treaty is the law of the land, superior to any law which the legislature could pass, and seems to be as explicit as any general law could be reasonably framed. It would be but an idle ceremony for the legislature to re-enact the treaty, and we find nothing in the language of the treaty itself which would seem to make its application to any particular case depend on the action of the legislature. Like any other law, its construction and application to particular cases are questions for the courts.

The clause in controversy, "*which term may be reasonably prolonged, according to circumstances,*" means nothing more than that in cases where the circumstances are such as to make it reasonable that such aliens, in order to preserve their rights, should have further time, in addition to the term of two years, in which to sell their interest in the lands, such further time as may be reasonable under the circumstances shall be allowed. Any other construction would, for all practical purposes, render this provision of the treaty nugatory, while, like any other instrument, it should be construed to give it practical effect, rather than to make it ineffectual. The view we have taken is strengthened somewhat by the fifth article of the treaty, which provides that "if any dispute should arise between different claimants to the same inheritance, they shall be decided, in the last resort, according to the laws and by the judges of the country where the property is situated." Then, again, the rule is, that "where a treaty admits of two constructions, one restrictive as to the rights that may be claimed under it, and the other liberal, the latter is preferred," (*Hauenstein* v. *Lynham*, 100 U. S. 483; *Schultze* v. *Schultze*, 144 Ill. 290;) and construction of treaties is the peculiar province of the judiciary when a case arises between individuals. *Wilson* v. *Wall*, 6 Wall. 83.

The only question remaining for discussion is, whether or not the facts and circumstances alleged in the bill are sufficient to show that appellants still had an interest in the property, and the right, under the treaty, to sell it, when the bill was filed. The bill shows that they could not sell, so as to derive any substantial benefit from their interest in the property, until it was ascertained what the debts were against the estate, and that they had been unable to make any voluntary sale of the property. No remedy, then, was left but the one they have pursued,— to have the property divided, or a judicial sale. The period of two years after the death of Scharpf expired

August 2, 1896, and the bill was filed less than six months thereafter. In such a case prudence would dictate that a sale should not be enforced before it could be known what the liens on the property would be. We are satisfied, from all the facts alleged, that appellants have not lost their interest in the property, and that it was error to sustain the demurrer to the bill.

The decree is reversed and the cause is remanded, with directions to overrule the demurrer, and for further proceedings not inconsistent with this opinion.

*Reversed and remanded.*