A. H. AHRENS ET AL., Appellants, v. JOHN B. AHRENS ET AL., Appellees.

**Real property:** INHERITANCE BY ALIENS: STATUTES: TREATY. Under the statutes of this State as they existed prior to 1868, a nonresident alien could not inherit real estate; and although a treaty existed between the United States and Hanover, which provided that where, upon the death of any person holding real estate in one country which would by law descend to a citizen or subject of the other, were he not disqualified by alienage, such person should have a reasonable time in which to sell the same and withdraw the proceeds, such treaty did not annul the statute, but operated to suspend its application to a subject of Hanover.

**Same:** TREATY RIGHTS: FAILURE TO EXERCISE: REASONABLE TIME. The treaty referred to did not create in an alien heir a fee-simple title to the real property of his ancestor, although giving him the right to sell and withdraw the proceeds within a reasonable time; but upon failure to exercise that right the resident heirs, upon whom the statute cast the property, became vested with the full fee-simple title, as remaindermen.

**Same:** The question of what was a reasonable time in which a nonresident alien could sell the property and withdraw the proceeds was not fixed by the treaty and hence became a question for judicial construction; and in this instance it is held that more than a reasonable time had elapsed after the death of the ancestor in 1860 to the enactment of the statute in 1868, and that the expiration of such time without action on the part of the nonresident alien worked a forfeiture of his rights under the treaty, and vested the fee-simple title in the resident heirs.

*Appeal from Clinton District Court.*—HON. A. P. BARKER, Judge.

WEDNESDAY, NOVEMBER 17, 1909.

THIS is an action for partition. There was a de-
murrer to the petition, which challenged the alleged title
of the plaintiffs. The demurrer being sustained, and the
plaintiffs refusing to plead further, the petition was dis-
missed, and they have appealed.—*Affirmed.*

*Skinner & Coe,* for appellants.

*S. C. Scott* and *John B. Ahrens,* for appellees.

EVANS, C. J.—Although in form this is an action for
partition, in its real effect it is an action to try the title of
the plaintiffs to an undivided interest in certain land in
Clinton County. The common source of title under which
both parties claim was Bernard Ahrens, who died intestate
December 18, 1860, seised of the undivided half of a
quarter section of land; his brother, J. D. Ahrens, being
seised of the other undivided half thereof. Bernard left
neither widow nor children. His mother, Trinke Ahrens,
was his only surviving parent. He left surviving him two
brothers and two sisters, the only other children of his
mother. The mother was resident of the United States,
and died March 19, 1862. One brother and sister were
residents of the United States at the time of the death of
Bernard, and ever after. The other brother and sister
were nonresident aliens, residents of Oldenburg, Germany,
and continued to be nonresident aliens until 1869, when
they removed to the United States. The resident brother
was J. D. Ahrens, now deceased, the owner of the other
undivided half of the quarter section at the time of Ber-
nard's death, and the father of the defendants in this suit.
His resident sister was Wilhelmina Schmidt, who conveyed
to her brother, J. D. Ahrens, all her interest in Bernard's
estate. The nonresident brother was A. H. Ahrens, plain-

tiff herein, and the nonresident sister was Mrs. Becker, now deceased, the mother of the other plaintiffs. The contention of the plaintiffs is that the nonresident brother and sister held each an undivided quarter of Bernard's real property by inheritance. The contention of the defendants is that the resident brother and sister took it all, subject to the mother's right. Both parties in argument seem to assume that the mother had a life estate. Whether this is a strictly accurate assumption is not material for our consideration, and the mother's rights may be disregarded for the purpose of our discussion.

Under the statutes of this State prior to 1868, a nonresident alien could not inherit real estate therein. *Stemple v. Herminghouser*, 3 G. Greene, 408; *Krogan et al. v. Kinney et al.*, 15 Iowa, 242; *Rheim et al. v. Robbins*, 20 Iowa, 45; *Greenheld v. Stanforth*, 21 Iowa, 595; *Brown v. Pearson*, 41 Iowa, 481; *Furenes v. Mickelson*, 86 Iowa, 508; sections 2489, 2490, Revision 1860. It appears, however, that at the time involved in this controversy there was in force a treaty between the United States and Hanover, which contained the following provision: "Where, on the decease of any person holding real estate within the territories of one party, such real estate would by the laws of the land descend on a citizen or subject of the other, were he not disqualified by alienage, such citizen or subject shall be allowed a reasonable time to sell the same and to withdraw the proceeds without molestation, and exempt from all duties of detraction on the part of the government of the respective States." It is conceded by the defendants that, insofar as there was any inconsistency between this treaty and the Iowa statute, the treaty must be deemed paramount. The effect of the treaty was not to nullify the statute, but to suspend it in its application to a citizen of Hanover. The contention of the plaintiffs is that the effect of this treaty was to cast

1. REAL PROPERTY: inheritance by aliens: statutes: treaty.

descent upon the nonresident brother and sister, and that such descent carried with it the full fee title, and that they have never been divested of such title. The argument at this point is that by virtue of this treaty the nonresident alienage did not disqualify them to take title of the real estate. It only disqualified them to hold such title beyond a reasonable time. It is conceded that ordinarily they could not have held the title beyond a "reasonable time." They claim, however, that they were relieved of this condition: (1) By the legislation of 1868, which removed their disqualification; and (2) by their removal to the United States in 1869.

It is contended for the defendants that the title of the nonresident aliens, such as it was, was fully terminated by operation of law prior to the legislation of 1868 by the failure of such nonresident aliens to sell the 2. SAME: treaty rights: failure to exercise: reasonable time. real estate within a "reasonable time," and that the full and complete title had vested in the ancestor of defendants prior to such legislation. This view was sustained by the trial court. There is much discussion in the cases as to the nature of the title which nonresident aliens held under the terms of this treaty. Some authorities denominate it a base or qualified fee, and others as a determinable fee. The terminology is not of controlling importance. That the right to sell carried with it the ownership as a necessary incident to the power of sale is held by all the authorities. That such ownership was something less than a fee simple absolute is also quite beyond discussion. That the remainder of such title vested in the resident heirs, and that such remainder drew the full fee-simple title into such resident heirs upon failure of the condition upon which the nonresident aliens took their title, seems to us clear. The authorities are quite uniform, also, in holding that, upon failure of the condition imposed by the treaty, the title of the nonresident alien would fail by operation of

law. Under such circumstances the treaty furnishes no further impediment to the statute. It ceases, so to speak, to suspend the statute, and the full fee-simple title vests in the persons upon whom the statute undertook to cast it in the first instance. This is the net result in all the cases, although it may be reached by a different course of reasoning and by the use of a varying terminology. *Lorieux v. Keller,* 5 Iowa, 196; *Sullivan v. Burnett,* 105 U. S. 334 (26 L. Ed. 1124); *Wieland v. Renner,* 65 How. Prac. (N. Y.) 245; *Doehrel v. Hilmer,* 102 Iowa, 169; *Schultze v. Schultze,* 144 Ill. 290 (33 N. E. 201, 19 L. R. A. 90, 36 Am. St. Rep. 432); *Kull v. Kull,* 37 Hun, 476.

This brings us to a consideration of the question whether there was a failure of the condition on which the nonresident aliens held their ownership. There is no claim that these aliens 'have sold or attempted to sell the real estate in question. Their only claim is that they were relieved from the burden of the condition by the legislation of 1868, and by their acquisition of a residence in the United States in 1869. The defendants contend that the condition had failed prior to the legislation of 1868, and that the fee-simple title had vested absolutely in the resident heirs. If this be true, it leaves the plaintiffs without ground to stand upon. This question is dependent upon the further question whether more than a "reasonable time" had elapsed after descent was cast and before the legislation of 1868. It is urged by the plaintiffs that the question of "reasonable time" is a legislative one, and that it can not be fixed by judicial construction. It is undoubtedly true that the Legislature could have enacted legislation fixing the time wherein a sale of the property should be had, provided only that it should not be so brief as to violate the spirit of the treaty. It is also true that the time could have been expressly fixed by the treaty itself; but this was not done by either

3. SAME.

method.   The question was therefore left necessarily for judicial construction.

During the period covered by our inquiry, there were many treaties in force between our government and European sovereignties which contained a provision similar to the one under consideration. In the majority of them, the limit of time was fixed at two years. In some of them it was fixed at three years. Our attention has been directed to no treaty which fixed a higher limit of time than the latter. In the *Doehrel* case, *supra,* this court held that five years was abundant time to answer the call of a treaty for a "reasonable time." In this case reference was had to our later statute enacted in 1885 fixing five years as a time limit within which certain conditions of inheritance should be complied with. We have no occasion now to fix any hard and fast rule whereby it may be said that a "reasonable time" is neither more nor less than five years. It may be assumed for the purpose of the argument that what is a "reasonable time" in a given case is a mixed question of law and fact, depending upon the circumstances alleged or proved. We think, however, that it should be held as a matter of law that, in the absence of excusing facts or circumstances, more than a reasonable time elapsed in this case after the death of the mother and before the legislation of 1868, and that the expiration of such time worked a failure of the condition imposed in the treaty. It necessarily follows that the full title must be deemed to have vested in fee simple in the resident heirs at the same time. Whether a different rule should prevail upon a showing of excusing circumstances is a question upon which we will not speculate. So far as appears in this case, the nonresident aliens have never attempted to avail themselves of the provision of the treaty until now. It was not a question with them whether two years, five years or ten years should be deemed a "reasonable time." They waited fifty years. They have slumbered

too long. Their case does not appeal loudly for equitable interference or intervention. They insist upon the letter of the law, and to this they are entitled. This is not sufficient, however, to carry the coveted title across the chasm of time which separates them from their original rights.

The conclusion reached at this point renders it unnecessary for us to consider the other points argued by counsel.

We agree with the trial court in the conclusion reached, and its judgment is *affirmed*.