FRED PIERSON, APPELLANT, v. DAVID A. LAWLER ET AL., APPELLEES.

FILED FEBRUARY 5, 1917. No. 19029.

1. **Aliens: RIGHT TO INHERIT.** Under a treaty removing the statutory disqualification of a nonresident alien to inherit land in Nebraska and providing that he "shall be allowed a term of three years in which to sell the same, this term to be reasonably prolonged if circumstances render it necessary," the disqualifying statute is suspended, but if the alien fails to sell the land within the prescribed period the title vests in those to whom it would have de-

scended in absence of a treaty. Rev. St. 1913, sec. 6273; 31 U. S. St. at Large, art. I, p. 1939.

2. ——: ——. Under a treaty suspending the statute disqualifying a nonresident alien from inheriting land in Nebraska and providing that he "shall be allowed a term of three years in which to sell the same, this term to be reasonably prolonged if circumstances render it necessary," it is a question for the judiciary whether the circumstances were such as to prolong the prescribed period. 31 U. S. St. at Large, art. I, p. 1939.

APPEAL from the district court for Keith county: HANSON M. GRIMES, JUDGE. *Affirmed as modified.*

*J. G. Beeler,* for appellant.

*Hoagland & Hoagland, contra.*

ROSE, J.

This is an action to partition the northwest quarter of section 34, township 13, range 35 west, in Keith county. The case was presented to the trial court on controverted issues relating to title and to the respective shares of the owners. When the land belonged to Josiah Weir, he died intestate September 20, 1901, leaving as his only heirs a brother, John C. Weir, and two sisters, Grace Beveridge and Mary Young, the latter being an alien residing in Scotland. Grace Beveridge died in September, 1906, leaving as her only heirs nine children. Through conveyances from John C. Weir, Mary Young and three Beveridge heirs, plaintiff claims an undivided seven-ninths of the land. Defendant, David A. Lawler, concedes that plaintiff owns the interests of three Beveridge heirs, but, subject thereto, claims title to the land through foreclosure of a mortgage, a decree quieting title, and conveyances from six Beveridge heirs. From a decree confirming in defendant David A. Lawler an undivided eight-ninths, plaintiff has appealed.

At the time of Josiah Weir's death the land was incumbered by a mortgage. The Farm Land Company, as holder of the mortgage, commenced a foreclosure suit February 23, 1903, making Grace Beveridge, Mary Young

and John C. Weir defendants; summons being served upon the latter, but not upon the other two. A decree of foreclosure and an order of sale followed. In the publication of the notice of sale, in the appraisal, in the sale, and in the sheriff's report of the sale, the land was described as the northeast quarter instead of the northwest quarter. The sale was confirmed by the district court, and the sheriff executed and delivered to the Farm Land Company, as purchaser, a deed correctly describing the mortgaged premises. In 1908 the Farm Land Company commenced a suit to quiet its title and brought into court as de'endants John C. Weir, Mary Young and the Beveridge heirs. John C. Weir employed an attorney to make a defense for all of the defendants. After issues were joined by the pleadings the trial court, upon a stipulation by counsel, entered a decree quieting in the Farm Land Company title to an undivided one-half and in the Beveridge heirs title to an undivided one-half. The stipulation recited that Mary Young was a subject of Great Britain residing in Scotland, and provided further: "That the said Mary Young was incapable of inheriting any interest in said real estate, and that the said John C. Weir and the said Grace Beveridge each succeeded to an undivided one-half of said land." The interest acquired by the Farm Land Company was subsequently sold to defendant David A. Lawler, who purchased also the interests of six Beveridge heirs.

It is contended that the error in the description of the mortgaged land invalidated the sheriff's sale, that the interest of John C. Weir was not foreclosed, and that plaintiff acquired it by purchase. The determination of the question thus raised is not necessary to a decision, since it is conclusively established by the decree in the suit to quiet title that John C. Weir had no interest in the land. He had been fully informed of the action his attorney would take in entering into the stipulation and he acquiesced therein. It follows that he is bound by the decree, that he did not thereafter have any interest in the land, and that he conveyed nothing to plaintiff.

100 Neb.—50

The principal question presented by the appeal relates to the rights of Mary Young, from whom plaintiff procured a quitclaim deed. It is argued that, under a treaty between the United States and Great Britain, she inherited one-third of the land of her deceased brother, and that the decree barring her inheritance in the suit to quiet title is void as to her for the reason that it was based on an unauthorized stipulation. The treaty upon which plaintiff relies provided:

"Where, on the death of any person holding real property (or property not personal), within the territories of one of the contracting parties, such real property would, by the laws of the land, pass to a citizen or subject of the other, were he not disqualified by the laws of the country where such real property is situated, such citizen or subject shall be allowed a term of three years in which to sell the same, this term to be reasonably prolonged if circumstances render it necessary, and to withdraw the proceeds thereof, without restraint or interference, and exempt from any succession, probate or administrative duties or charges other than those which may be imposed in like cases upon the citizens or subjects of the country from which such proceeds may be drawn." 31 U. S. St. at Large, art. I, p. 1939.

In the absence of a treaty, the inheritance of land by a nonresident alien would be defeated by a statute of Nebraska. Rev. St. 1913, sec. 6273. The nature of the interest acquired by a nonresident alien under the terms of the treaty and the descent of title are subjects which have been explained as follows:

"There is much discussion in the cases as to the nature of the title which nonresident aliens held under the terms of this treaty. Some authorities denominate it a base or qualified fee, and others as a terminable fee. The terminology is not of controlling importance. That the right to sell carried with it the ownership as a necessary incident to the power of sale is held by all the authorities.

That such ownership was something less than a fee simple absolute is also quite beyond discussion. That the remainder of such title vested in the resident heirs, and that such remainder drew the full fee-simple title into such resident heirs upon failure of the condition upon which the nonresident aliens took their title, seems to us clear. The authorities are quite uniform, also, in holding that, upon failure of the condition imposed by the treaty, the title of the nonresident alien would fail by operation of law. Under such circumstances the treaty furnishes no further impediment to the statute. It ceases, so to speak, to suspend the statute, and the full fee-simple title vests in the persons upon whom the statute undertook to cast it in the first instance. This is the net result in all the cases, although it may be reached by a different course of reasoning, and by the use of a varying terminology." *Ahrens v. Ahrens,* 144 Ia. 486. *Wunderle v. Wunderle,* 144 Ill. 40, 64-67.

In this view of the law, Mary Young, notwithstanding the statute prohibiting a nonresident alien from inheriting land in Nebraska, acquired under the treaty the right to sell an undivided one-third of the land in controversy within three years, "this term to be reasonably prolonged if circumstances render it necessary." Did she make the sale within that period? She attempted to sell her interest in the land May 8, 1912, more than eleven years after the death of her brother Josiah Weir. Plaintiff argues that the treaty is not self-executing, and that the right of sale continues until a time limit is set by the legislature—a step not taken by the lawmakers. The time for exercising the right, however, is fixed by the treaty itself, and the necessity for prolonging the period is a question for the judiciary. *Scharpf v. Schmidt,* 172 Ill. 255. Do the circumstances require a finding that the time should be prolonged more than eight years beyond the three-year period specified in the treaty? Plaintiff insists that climatic and financial conditions and clouds on the title made the land unsalable

and justified the delay. In the light of the evidence this position seems to be untenable. While there is evidence tending to show that the land was unsalable in 1903 and 1904, it is not shown that the same conditions prevailed from 1905 to 1908 or that Mary Young attempted to make a sale prior to 1912. The record of the foreclosure fails to show service of process upon Mary Young, the nonresident alien. As to her the decree of foreclosure was void on its face. Notwithstanding the decree in the suit to quiet title she found a purchaser. Circumstances showing a necessity for prolonging the period a sufficient length of time to uphold the conveyance from Mary Young to plaintiff are not proved. She in fact lost her interest in the land before the suit to quiet title was instituted. It follows that defendant David A. Lawler acquired from the Farm Land Company an undivided three-sixths and from six Beveridge heirs an undivided two-sixths, making in all an undivided five-sixths of the land in controversy. An undivided one-sixth was acquired by plaintiff from three Beveridge heirs. The judgment of the district court is modified to confirm the shares in the manner indicated, and as thus modified it is affirmed.

MODIFIED AND AFFIRMED.

LETTON, J., not sitting.