[Civ. No. 9329. Third Dist. May 6, 1958.]

Estate of HENRY PETER RONKENDORF, Deceased. HENRY A. GOTTSCHE, Appellant, v. ATTORNEY GENERAL OF THE UNITED STATES OF AMERICA et al., Respondents.

Manfred M. Warren, Howard C. Ellis, Bernard B. Glickfeld and C. J. Hollander for Appellant.

Dallas S. Townsend, Assistant Attorney General of the United States, Lloyd H. Burke, United States Attorney, Mary Eschweiler, Special Assistant, George B. Searls, Irwin A. Seibel and Marbeth A. Miller for Respondents.

SCHOTTKY, J.—This is an appeal from a decree determining that the Attorney General of the United States was entitled to succeed to the real property of the estate of Henry Peter Ronkendorf and denying the claim of Henry A. Gottsche.

Henry Peter Ronkendorf, a citizen of the United States, died intestate on May 6, 1943. He was unmarried and without issue. At the time of his death he was the owner of certain real property in the county of San Joaquin. In 1947, the administratrix of the estate informed the Attorney General that the closest living relatives of the decedent were two first cousins who lived in Germany. Thereafter, in accordance with the provisions of the Trading With the Enemy Act, by Vesting Order Number 10174 dated November 17, 1947, the interest of the German cousins in the estate became vested in the Attorney General. Subsequently, as a result of an overseas investigation another first cousin was discovered and his interest was vested by Vesting Order Number 14654 dated May 15, 1950. Thereafter, upon the administratrix's unopposed petition for distribution which set forth that the German nationals mentioned above were the heirs of the decedent and that their interest had been vested in the Attorney General, the superior court, on October 16, 1951, entered a decree

of distribution in which it ordered the administratrix to distribute the estate to the Attorney General.

In March, 1952, Henry A. Gottsche, appellant herein, filed a motion to set aside the decree of distribution, and he petitioned for a decree determining to whom the estate should be distributed. Henry Gottsche is an American citizen and is a son of one of the first cousins of the decedent. On June 4, 1952, the court set aside the decree of distribution.

Thereafter, and prior to the trial on the merits of Henry Gottsche's claim, the Attorney General discovered other first cousins and a maternal aunt of the decedent, Anna Margaretha Holst. All were German nationals residing in Germany. The Attorney General also discovered that Anna Margaretha Holst had died in April, 1948, and had been survived by her husband, Heinrich Amandus Holst. Upon discovering these facts, Vesting Order Number 14654 was amended on January 18, 1954, and vested the interest of all successors to Anna Margaretha Holst in the Attorney General.

The trial court found that Anna Margaretha Holst was the decedent's closest living blood relative; that she died in 1948 and was a citizen and resident of Germany at the time of her death; that her heirs, including her husband, were citizens and residents of Germany at the time of her death and were such when their interest was vested in the Attorney General on January 18, 1954. The court also found that the war with Germany was terminated as of October 19, 1951, by a proclamation of the President of the United States issued pursuant to a joint resolution of Congress which provided that notwithstanding the resolution, any property or interest which prior to January 1, 1947, was subject to vesting under the provisions of the Trading With the Enemy Act or which had theretofore been vested should be subject to the provisions of that act as if the resolution had not been adopted; that article IV of the Treaty of Friendship, Commerce and Consular Rights with Germany (44 Stat. 2132, 2135) was in full force and effect at all times; that at the time of the decedent's death and until her death Anna Margaretha Holst was an enemy of the United States within the meaning of the Trading With the Enemy Act; that at the time of Anna Margaretha Holst's death and continuously thereafter her heirs and next of kin were enemies of the United States within the meaning of the act; that by virtue of the proviso of House Joint Resolution 289 the heirs of Anna Margaretha Holst, with respect to the real property in San Joaquin County, were

enemies of the United States within the meaning of the Act; that the real property which decedent owned was subject to seizure after January 1, 1947, by virtue of the proviso; that it was subject to vesting in January, 1954. The court concluded from the aforementioned facts that the provisions of section 259 of the Probate Code did not deprive Anna Margaretha Holst or her heirs of the right to inherit the property; that by virtue of article IV of the treaty, Anna Margaretha Holst acquired the title to the real property of the decedent subject to the provisions of the article of the treaty requiring her to sell it within the term of the treaty (three years); that by the provisions of the article the term could be reasonably prolonged if necessary; that neither Anna Margaretha Holst nor her heirs had a reasonable time to sell the property; that at the time of the amended vesting order in January, 1954, the Attorney General had the authority to exercise his vesting functions; and that by such vesting order he acquired title to the real property in question and that the Attorney General was entitled to distribution of the real property.

The basic questions involved in this appeal require an interpretation of article IV of the Treaty of Friendship, Commerce and Consular Rights with Germany. Article IV reads as follows:

"Where, on the death of any person holding real or other immovable property or interests therein within the territories of One High Contracting Party, such property or interests therein would, by the laws of the country or by a testamentary disposition, descend or pass to a national of the other High Contracting Party, whether resident or non-resident, were he not disqualified by the laws of the country where such property or interests therein is or are situated, such national shall be allowed a term of three years in which to sell the same, this term to be reasonably prolonged if circumstances render it necessary, and withdraw the proceeds thereof, without restraint or interference, and exempt from any succession, probate or administrative duties or charges other than those which may be imposed in like cases upon the nationals of the country from which such proceeds may be drawn."

The rights secured are in terms a right to sell within a specified time plus a right to withdraw the proceeds and an exemption from discriminatory taxation. Though they are not expressed in terms of ownership or the right to inherit, that is their import and meaning. (*Clark* v. *Allen*, 331 U. S. 503 [67 S.Ct. 1431, 91 L.Ed. 1633, 170 A.L.R. 953].)

Appellant, Henry A. Gottsche, contends that the Attorney General has not made out a case for the passage of title from the decedent to Anna Margaretha Holst. Appellant's argument is that Anna Holst received only a qualified interest in the property and if the condition failed the remainder which was vested in appellant drew the full title to it. Appellant further argues that in order for Anna Margaretha Holst to inherit under Probate Code, section 259 (in the absence of testamentary disposition), it was necessary to prove, which allegedly was not done, the reciprocal rights of inheritance. Appellant contends that even if this was proved, then Anna Margaretha Holst had more than a reasonable time to sell, and if she did not and her interest devolved to her heirs they had more than a reasonable time to sell and therefore the defeasible fee failed before the Attorney General acquired any interest in 1954.

Respondents in reply argue: "The State of California does not restrict alien ownership but merely inheritance (section 259, Probate Code). The limitation on the right to inherit real property, was held by the Supreme Court to have to yield to article IV (*Clark* v. *Allen*, 331 U.S. 503 [67 S.Ct. 1431, 91 L.Ed. 1633, 170 A.L.R. 953]). Thus, Anna Holst acquired title to her inheritance. However, as she was not prohibited under California law from continuing to own the property, she was not required to sell it. Accordingly, she acquired title to the property in fee simple, which title passed to her heirs."

There was no proof that at the time of Ronkendorf's death reciprocal rights existed, but even if they did not exist the heirs of Ronkendorf would have the rights set forth in article IV of the treaty.

Respondents argue further that even if Anna Holst and her heirs were required under article IV to liquidate their inheritance, the outbreak of the war with Germany abrogated this requirement. This view is supported by a statement in *Clark* v. *Allen, supra,* which reads: "We assume that these provisions [prohibiting commercial transactions with German nationals] abrogate the parts of Article IV of the treaty dealing with the liquidation of the inheritance and the withdrawal of the proceeds, even though the Act provides that the prohibited activities and transactions may be licensed."

Respondents' final contention is that even assuming liquidation was required, the trial court was justified in concluding that under the circumstances of this case the alien heirs did not have an opportunity to sell within the required

period. This was the ground upon which the trial court based its decision. We believe that the memorandum opinion of the trial court ably and correctly states the law and the facts, and we adopt the following portion thereof as part of the opinion of this court:

"Conceding then that a determinable fee, defeasible on a failure to sell within the period limited, was acquired by the German heir, American claimant argues that a failure to sell has terminated the fee thus making American claimant the sole heir. According to American claimant the German heir, her devisee or the Attorney General were duty bound to proceed under the treaty within three years from and after the termination of hostilities officially on December 31, 1946, and in any event within five years thereafter, under Section 1026 of the Probate Code of the State of California. In default thereof the estate of the German heir or her successors ceased and the title 'sprung' to American claimant.

"As heretofore indicated, article IV clearly contemplates a full and fair opportunity to sell the property and remove the proceeds within the period limited or a necessary extension thereof. Perhaps it should be observed that by this very procedure were the rigors of the common law prohibiting inheritance by an alien and causing escheat ameliorated. So also it is patent that a reasonable extension of the period is envisaged when necessary. Moreover the propriety of an extension and the duration thereof are matters for judicial determination. *Scharpf* v. *Schmidt*, 172 Ill. 255 [50 N.E. 182, 184]; *Pierson* v. *Lawler*, 100 Neb. 783 [161 N.W. 419, 421]; *Ahrens* v. *Ahrens*, 144 Iowa 486 [123 N.W. 164, 166, Ann. Cas. 1912A 1098].

"It is interesting to note at this juncture that the Supreme Court of the United States in *Clark* v. *Allen*, 331 U.S. 503 [67 S.Ct. 1431, 91 L.Ed. 1633, 170 A.L.R. 953], observes:

. . . since the declaration of war on December 11, 1941 (55 Stat. 796), the Act and the Executive Orders issued thereunder have prohibited the entry of German nationals into this country, have outlawed communications or transactions of a commercial character with them, and have precluded the removal of money or property from this country for their use and account. *We assume that these provisions abrogate the parts of article IV of the treaty dealing with the liquidation of the inheritance and the withdrawal of the proceeds, even though the Act provides that the prohibited activities and transactions may be licensed.* (Italics added.)

"This would appear to be an adequate basis for the conclusion that the liquidation provisions of article IV are inapplicable in view of the impossibility of compliance therewith. American claimant's contention that this language is out of context seems to have little merit when examined closely.

"While the approach just suggested may well dispose of American claimant's position, it is not necessary to predicate the conclusion reached by the court on this ground. Rather it would seem more appropriate to review the circumstances which demonstrate clearly that the German heir or her devisee have not yet had the opportunity which the law contemplates to sell and remove the proceeds. On the date of decedent's death the United States and Germany were at war. In May of 1945 hostilities ceased and a formal declaration thereof was made effective as of December 31, 1946, (Presidential Proclamation No. 2714) but it is expressly declared therein that 'a state of war still exists.' No change was made thereby in the enemy status of German Nationals nor was the general situation with respect to property restraints altered. See *Orme* v. *Northern Trust Co.*, 410 Ill. 354 [102 N.E.2d 335], certiorari denied 343 U.S. 921 [72 S.Ct. 677, 96 L.Ed. 1334]; *In re Yokohama Specie Bank*, 188 Misc. 137 [66 N.Y.S.2d 289]. The German heir died in 1948 whereupon her devisee acquired the title subject, of course, to the sale and withdrawal requirements of article IV none of which could be exercised at that time. Conditions continued unchanged thereafter until Congress passed House Joint Resolution No. 289 approved by the President on October 19th, 1951, declaring the state of war between Germany and the United States terminated. This resolution contained the following proviso:

"Provided, however, That notwithstanding the resolution and any proclamation issued by the President pursuant thereto, any property or interest which prior to January 1, 1947 was subject to vesting or seizure under the provisions of the Trading With the Enemy Act of October 6, 1917 (40 Stat. 411), as amended, or which has heretofore been vested or seized under that act, including accruals to or proceeds of any such property or interest shall continue to be subject to the provisions of that act in the same manner and to the same extent as if this resolution had not been adopted and such proclamation had not been issued. Nothing herein and nothing in such proclamation shall alter the status, as it existed immediately prior thereto, under that act of Germany or of any person with respect to any such property or interest.

"It can be seen readily that conditions remain unchanged with respect to the property and that the right of sale and withdrawal were still fully restricted. This situation continued until June 24, 1953, when License No. 101 of the Attorney General unblocked the property and removed the restrictions concerning sale and withdrawal. Now for the first time compliance with the treaty seemed possible. But, alas, the probate proceedings had been reopened and the highly confusing and complex problem of heirship remained undetermined. Obviously with heirship contested the devisee of German Heir was not yet in a position to proceed with a sale of the kind contemplated by article IV of the treaty. While it is suggested by American claimant that a probate sale passing marketable title was possible such a statement is not really helpful. Brief reflection will disclose that a probate sale could be made only on certain conditions specified by law and although the German heir might be willing to consent to a sale not otherwise permissible, so long as heirship remained undetermined, there is no assurance that other claimants would acquiesce. In any event the pending probate proceeding renders impossible the exercise of the sale and withdrawal privileges provided for by law in the manner contemplated.

"Finally, on this phase of the problem American claimant argues that the Attorney General was obligated to effect sale and that his failure so to do operated in some manner not precisely stated to defeat the title. Apparently the theory is that the Attorney General somehow stands in the shoes, so to speak, of the German heir. While there may be circumstances under which the Attorney General is authorized to take certain steps in connection with this type of property, the court's attention has been directed to no law prescribing a duty so to do. Under the circumstances this court concludes that no duty to sell existed on the part of the Attorney General. Actually then during the entire period between decedent's death in 1943 and the amended vesting order in 1954 neither the German heir nor her devisee were in a position to exercise the sale and withdrawal privileges. This circumstance made a prolongation of the time limited therefor absolutely necessary.

"American claimant next contends that the failure of German heir and her devisee to appear and demand the property within the five-year period prescribed by section 1026 of the Probate Code of the State of California cut off her rights and that as a consequence title passed to the Amer-

ican claimant. According to American claimant the critical five-year period begins with the official cessation of hostilities on December 31st, 1946, and ends on December 31st, 1951. As pointed out by the Attorney General, section 1026 of the Probate Code may well conflict with the provisions of article IV of the treaty with respect to the time limited for sale and withdrawal. For example, it would seem to require the exercise of these rights within a period shorter than that required by the treaty in the event of a necessary prolongation beyond five years. It is elementary, of course, that in the event of a conflict between domestic law and a treaty the latter prevails. *Clark* v. *Allen, supra*; *In re Romaris' Estate,* 218 P. at 422 [191 Cal. 740 (218 P. 421)]. *In re Meyer Estate,* 107 Cal.App.2d 799 [238 P.2d 597, 601]. Even if it be assumed, however, that section 1026 is applicable it would not appear to support the position of the American claimant. Section 1026 is an escheat statute under which no rights are conferred upon anyone but the State of California. Nor would the fact that the State of California is not a party to this proceeding seem material.

"Finally, it is contended that the amended vesting order of January 18th, 1954, was invalid because the Attorney General's power to vest ended with the termination of the war in October, 1951. It will be remembered that House Joint Resolution No. 289 by which the state of war was terminated provided specifically that any property subject to the provisions of the act prior to January 1, 1947, was to remain subject thereto. The effect of this proviso was to continue unchanged the enemy status of a person with respect to any property subject to the act prior to January 1, 1947. The property involved herein was enemy-owned from the date of decedent's death and its character as property subject to vesting was never altered thereafter. The power of the Attorney General to vest under these conditions seems clear. *Orme* v. *Northern Trust Co., supra*; *National Savings & Trust Co.* v. *Brownell, No. 12217* March 3, 1955; *LaDue & Co.* v. *Brownell, No. 11305* March 18, 1955; Here again, however, it is contended that the Attorney General did not act with requisite dispatch. Actually it would seem that vesting must be done only during a period when it is authorized by law. When during such period the actual vesting is accomplished appears to be discretionary. Here Congress has deliberately continued the power to vest and no time limitations of any nature have been placed upon the exercise thereof. More-

over, as pointed out by the Attorney General, the facts surrounding this whole proceeding demonstrate that vesting was accomplished as quickly as the conditions created by the war and its aftermath permitted.''

For the reasons hereinbefore set forth we conclude that the evidence and the law amply support the court's conclusion that Anna Margaretha Holst was the heir of decedent and that the estate acquired was not terminated by a failure to sell and withdraw the proceeds inasmuch as an extension of the time limited therefor was necessary; that the claim of appellant, the American claimant, should be rejected; that the vesting order of respondent Attorney General was timely; and that respondent Attorney General was entitled to succeed to the real property of said decedent.

The judgment is affirmed.

Van Dyke, P. J., and Peek, J., concurred.

A petition for a rehearing was denied June 2, 1958, and appellant's petition for a hearing by the Supreme Court was denied July 2, 1958.