## BAMFORTH v. IHMSEN, Admr.
### (No. 1023; Decided February 10, 1922; 204 Pac. 345)
### (Rehearing Denied April 11, 1922)

EXECUTORS AND ADMINISTRATORS—OFFICERS—COLLATERAL ATTACK—
ACTION BY ADMINISTRATOR TO QUIET TITLE—JOINDER OF PARTIES—
INTERVENTION—INTERVENORS STANDING AS A PARTY—PETITION FOR
ACTION TO QUIET TITLE—RIGHT OF ALIEN HEIRS TO INHERIT—IN-
HERITANCE AS AFFECTED BY TREATY—WATER RIGHTS—DECREES OF
STATE BOARD OF CONTROL—NON-JOINDER OF NECESSARY PARTIES—
EVIDENCE OF DITCH TITLE—ABANDONMENT OF WATER RIGHTS—DE-
CREE PROVIDING FOR WATER MEASURING DEVICE—COMPETENCY OF
PARTY TO TESTIFY AGAINST ADMINISTRATOR—WATER RIGHTS AS AF-
FECTED BY DITCH CAPACITY.

1. A judgment is binding only on parties to the action and
   their privies and not on strangers to the record, but the
   right of strangers to attack a judgment is limited to
   those who can show a substantial interest, which the law
   is bound to protect.

2. An order appointing a district court clerk administrator
   of an estate made upon facts and under circumstances
   conferring jurisdiction is not subject to collateral at-
   tack.

3. Constitutional provisions prohibiting an increase of the
   salaries of public officers during their terms refer to
   money payable out of the public treasury and do not pro-
   hibit a district court clerk from acting as administrator
   of an estate and receiving compensation therefor.

4. In view of the provisions of Comp. Stats. 1920, Sections
   6829, 6834 and 6835 relating to executors and adminis-
   trators, and of Section 6234 relating to real actions, an
   administrator had capacity even prior to the amendment
   of Section 6835 by Chap. 19, Laws 1919, to sue in an
   action to quiet title to real property of the decedent.

5. While generally, where the right of intervention is in the
   discretion of the court, application to intervene should
   be made, and leave granted by the court, still the ab-
   sence of such application and leave where issues have
   been fully joined with them, does not go to the juris-
   diction, but must be considered as an irregularity only.

6. Heirs intervening in an action to quiet title have the right
   to file pleadings of their own, or may adopt part or all
   of the pleadings already filed, their character as parties

plaintiff or defendant, being governed by the nature of the title and the object of their demand.

7.  A petition to quiet title to ditch and water rights, alleging ownership of lands and certain ditch and water rights for the irrigation thereof; that defendant has no right or title to the ditch in controversy but denies petitioner's right thereto, wrongfully asserting some right or interest in the ditch and threatening to deprive petitioner of the use and enjoyment thereof, which claim creates a cloud on petitioner's title, states facts sufficient to constitute an action for quieting title under the statute.

8.  While the pleadings of an intervenor made a party by court order on voluntary appearance in an action to quiet title may be insufficient or incomplete, the court in its final decree should settle the whole controversy in accordance with equity.

9.  Under Art. 1 of Section 9, Wyoming constitution, resident aliens are entitled to inherit property the same as citizens.

10.  In the absence of statute the common law rule that a non-resident alien is without inheritable blood and cannot take real property by descent, applies in Wyoming except where qualified by the reciprocal terms of treaties with other countries.

11.  Under our treaty with Great Britain (31 U. S. Stats. 1939) a citizen or subject of either country disqualified by the laws of the other to inherit real property situate within the territories of one of the contracting parties, is allowed three years in which to sell the same, which term may be prolonged if circumstances render it necessary.

12.  The term "territories" as used in the existing treaty between United States and Great Britain (31 U. S. Stats. 1939) respecting inheritance rights of non-resident citizens or subjects of either country, is to be construed as meaning an area or locality under the dominion of the United States and not restricted to one of the territories thereof as distinguished from a state.

13.  In an action to quiet title to ditch and water rights the trial court gave the parties the full water rights claimed, but failed to correct a clerical error appearing in the decree of adjudication of said water rights theretofore given and made by the State Board of Control with respect to the range number in describing certain lands for which water rights were decreed, *held*, that no prejudice resulted to defendant by reason of the failure of the

trial court to correct the clerical error in the description referred to.

14. An objection of defect of parties first raised on motion for new trial came too late.

15. A verified petition prepared many years prior to suit for use in other proceedings, describing the respective interests of the parties to a present action to quiet title to ditch and water rights, in fact prepared by one of them, *held* admissible as an admission against interest.

16. In an action to quiet title to an interest in ditch and water rights the burden of establishing an alleged abandonment by plaintiff's intestate of such ditch and water rights is upon the party who asserts it and the evidence on the subject should be clear in order to establish abandonment.

17. In an action to quiet title to an interest in ditch and water rights a decree directing the construction of a concrete water division box and apportioning the costs thereof among the owners according to the proportionate interests in water rights, *held* not an abuse of discretion.

18. A defendant in an action to quiet title to interests in ditch and water rights is incompetent under Comp. Stats. 1920, Section 5807 to testify against the administrator and heirs of a deceased owner of an undivided interest therein or against a surviving joint owner of an interest in the same property.

19. A decree quieting title to interests in ditch and water rights for the irrigation of an area of land in excess of that established by the evidence is erroneous.

20. A decree quieting title to ditch and water right interests properly recognized and confirmed appropriations of water theretofore decreed to the parties by the State Board of Control, but was erroneous and defective in authorizing the parties to conduct a greater amount of water through the ditch than the capacity of the combined ditch rights owned by them warranted.

21. In an action to quiet title to ditch and water right interests a contention by plaintiff and intervenors that in view of Comp. Stats. 1920, Sec. 928 no proof of ditch ownership was necessary other than proof of water rights adjudicated through the ditch in controversy, and a decree apparently founded upon that theory were erroneous.

22. It appearing uncertain whether the trial court rested its conclusion of ditch ownership of the respective parties

on a legal presumption arising from the language of Sec. 928 Comp. Stats., or upon all of the evidence submitted in the case upon the subject of ditch rights, *held* that the cause should be remanded for new trial.

### ON PETITION FOR REHEARING

23. The Supreme Court will not dispose of a question on appeal by a modification of the judgment requiring a finding upon evidence not considered by the trial court.

24. Comp. Stats. 1920, Sections 928-933 provide for the creation of a record of title to interests in irrigation works; (a) where owners fail to make a record as therein provided or in some other manner, by a recognition of the adjudicated appropriations of claimants based upon ratios apportioned in accordance with the known capacity of the ditch or canal; (b) by a joinder of all owners in affidavits containing a declaration of relative interests and placing the same of record; (c) by proceedings in equity on the part of one or more joint owners where the ownership is in dispute and the recording of decrees rendered therein.

25. The fact that additional or incidental relief may be asked for and granted in an action by the joint owners of irrigation works under Section 933, Comp. Stats. 1920, will not defeat or affect the character of the action as an authorized method for the creation of a record of relative ownership of interested parties in irrigation works.

ERROR to the District Court, Laramie County; HON. WILLIAM C. MENTZER, Judge.

Action by Frederick J. Ihmsen as administrator of the estate of Thomas Gardner, deceased, against Fred F. Bamforth and another to quiet title to interests in ditch and water rights in which cause the heirs of Thomas Gardner, deceased, and C. P. Arnold, intervened. There was a judgment for plaintiffs and intervenors and defendant Bamforth brings error. The material facts are stated in the opinion.

*Albert D. Walton* and *H. V. S. Groesbeck,* for plaintiff in error.

Plaintiff Ihmsen was without capacity to sue; he was clerk of the court and his appointment as administrator was

void. The compensation of clerks must be prescribed by law. (Const. Art. 5, Section 13.) Their salaries may not be increased during terms; stated salaries must be paid all county officers. (Const. Art. 14, Section 1.) Clerks may act as administrators in estates less than $500.00. (Sec. 6745 Comp. Stats.) The axiom *expressio unius exclusio alterius est* applies. The clerk's duties are prescribed by statute; his duties in connection with estates are *quasi*-judicial in some instances. (Ross P. L. 158.) The office is incompatible with that of administrator. (6 Ency. A. & E. 134.) The order being void may be attacked collaterally. (Rice v. Tilton, 14 Wyo. 101; Hussey v. Southard, 90 Me. 298; Taylor v. Hasick, 13 Kans. 518.) An administrator is without authority to bring a suit to quiet title. (Ripley v. Miller, 152 Fed. 11; 2 Kinney on Irr. 834.) An administrator is without capacity to sue to quiet title. (Cook v. Elmore, 25 Wyo. 393.) The amendment by Chapter 19, Laws 1919 conferring such power was enacted since and does not apply. The pleading of intervenor Arnold is incomplete and sets up no claim. (Guaranty Co. v. Parker, 20 Wyo. 29; Mau v. Stoner, 15 Wyo. 109.) A joint recovery cannot be sustained by proof of several and independent causes of action in favor of separate plaintiffs. (Taylor v. Stockwell, 22 Wyo. 492; 30 Cyc. 105.) The Court without formal order recognized the intervenors which changed the nature of the action. (1 Bates, 118;) they are merely interlopers. (11 Ency. P. & P. 509.) Plaintiff could not bring in these new parties. The procedure is to first try the equitable part of the action and if a jury is demanded to try the issue of damages. (3 Kinney Irr. 2788; Wolbol v. Steinhoff, *et al.*, 25 Wyo. 227.) Blackburn and Weightman should have been joined as plaintiffs. The petition fails to state a cause of action within the statute or within the rule of Durell v. Abbott. (6 Wyo. 265.) The ditch title statute is unconstitutional. Sections 807-812 provide for establishing ditch ownership in accordance with adjudicated water rights. It is not competent for the legislature to make an affidavit evidence of ownership without notice to other owners of the ditch. (Const. Art. 1,

Sec. 6; Art. 1, Sec. 32; State v. Guilbert, 56 O. S. 575. Notice by registered mail should be sufficient. (Inv. Co. v. Carpenter *et al.* (9 Wyo. 110.) An affidavit is not admissable as *prima facie* evidence of facts it contains. (1 R. C. L. 766.) Vested rights will not be disregarded by statute of limitations. (12 C. J. 1225; 6 R. C. L. 450.) This court has interpreted the principles governing our bill of rights. (Grover Irr. Co. v. Ditch Co., 21 Wyo. 208; Arbuckle v. Pflaeging, 20 Wyo. 351; Bolln Co. v. Irr. Co., 19 Wyo. 542.) The action was evidently brought under Section 812, Comp. Stats. 1910, which, as we have observed, is void. Plaintiff has an adequate remedy at law for recovery of damages, therefore, injunction will not lie. (3 Kinney Irr. 2919.) The decree of the Board of Control to plaintiff intestate is not set out. The rule requires a former decree relied upon to be alleged. (Davis v. Chamberlain, 51 Or. 304; 98 Pac. 154.) The adjudication of rights of Gardner and Bamforth were contemporaneous. (3 Kinney Irr. 2785; Johnson v. Irrigating Co., 13 Wyo. 208.) Gardners appropriation from the Board of Control was in another township and no change was asked for in the petition and no correction was made by the Court below. Defendant asked that a change be made in his appropriation but this was ignored by the trial court. Action to quiet title cannot be brought by an administrator. (1 Wiel 300.) The heir and not the personal representative of a decedent may maintain such an action. (11 R. C. L. 276; Marsh v. Board, 38 Wis. 250.) The Board of Control was without authority to determine the ownership of the ditch. (Collett v. Morgan, 21 Wyo. 117.) The ownership of the ditch could not be determined by the ratio. Feast and Blackburn were shown to have some interest in the ditch which had not been conveyed. The decree is erroneous in attempting to adjudicate proportionate interest in the ditch in accordance with the volume of water adjudicated to the respective parties. The ditch and water rights had been abandoned by Gardner and Arnold; it is not alleged that

their lands needed irrigation which is a fatal omission.
(Allan v. McGill, 189 Pac. 987; Section 777 Wyo. Comp.
Stats; Vineyard Co. v. Company, 155 C. C. A. 305; Huford
v. Fye, 121 Pac. 400; Johnson v. Irrigating Co., 13 Wyo.
208; Rutherford v. Canal Co., 12 Wyo. 299.) Arnold and
Weightman constructed a new ditch with a headgate above
the Bamforth ditch. Plaintiffs and intervenors are estop-
ped by their acquiescence. (1 Wiel 640; 2 Kinney Irr.,
2032.) Abandonment within the terms of Section 741
Comp. Stats. 1910 was clearly shown. The statute on aban-
donment merely supplies an accumulative remedy and is
not exclusive. The rule adopted by this Court settles the
question. (Van Buskirk v. Livestock Co., 24 Wyo. 183.)
Plaintiffs and intervenors have a remedy at law, relief
being available under Section 824 Comp. Stats. 1910. The
Court erred in the admission of the records of the Board of
Control; the court also erred in the admission of testimony
as more specifically pointed out in our brief. The Court
erred in permitting Arnold to testify with respect to a pe-
tition prepared by him in former years for use before the
Board of Control. The Gardner heirs are non-resident
aliens and cannot inherit real property; their interests es-
cheated to the state which was not a party; the treaty
negotiated between this country and Great Britain (31 U.
S. Stats. 1939.) restricts the rights of subjects or citizens
to benefits of lands situated in territories of either country.
Congress has never attempted legislation as to the states
on the subject of alienage. Resident aliens may inherit.
(Art. 1, Sec. 29.) A distinction is made between states
and territories. (Glynn v. Glynn, 62 Neb. 872.) Our
statute of descent and distribution protects the rights of
descendants but does not extend to collateral relatives
such as those here involved. An alien at common law
cannot acquire title to real estate by operation of law. (2
Cyc. 94; 2 C. J. 1058; 2 R. C. L. 113.) The apportionment
of costs was erroneous; the decree is vague and uncertain
and clearly erroneous as to the ditch interests decreed to

the parties.  A judgment quieting title cannot give plaintiff water in excess of what he has previously used.  (Garthen v. Co., 170 Pac. 1113.)  It was unfair to amend the decree to conform the pleadings with the proof.  (48 O. St. 440.)  There was no evidence that Arnold ever did any work on the Park Ditch.  Feast's appropriation was never transferred.  The decree did not state the time of appropriation.  (Lee v. Hanford, 121 Pac. 558.)  The decree was not definite as to the water appropriated by each party nor the date of appropriation; it failed to state the ownership of the water; it does not separate the ownership of the intervenors.  The decree deprives the water commissioner of his statutory authority in the division of water conducted through partnership ditches.  (Hamp v. State, 19 Wyo. 377; 1 Wiel 502. Company v. Smithville Co., 218 U. S. 371.)  Decrees of this class should be definite as language can make them.  (Anthers v. Bryant, 22 Nev. 242; Patterson v. Ryan, 108 Pac. 1118.)  A proprietor guilty of laches is not entitled to injunction.  (1 Wiel 710.)  The decree should have recognized that the administrator had his remedy for distribution by action of the water commissioner and since he had an adequate remedy at law he was not authorized to bring a bill in equity.  (11 R. C. L. 65.)  The trial court did not recognize the fact that there had been an entire change of parties plaintiff, and this cannot be permitted under statutory provision permitting amendments.  Defendant contested all defects in pleadings of opposing parties and all were brought to the attention of the court below.

*N. E. Corthell,* for defendant in error.

The appointment of Ihmsen as administrator was made by a court having jurisdiction to act and is not subject to collateral attack.  There is nothing in the statutes forbidding the appointment of a clerk as administrator; the authorities cited on this branch of the case are not in point, in fact refute the argument.  (Sadler v. Sadler, 16

Ark. 628.) An administrator has ample authority to pro-secute an action to quiet title. Comp. Stats. 4313, 5561, 1910 and other sections of the code sustain this principle. The objection that intervenors were not properly joined is without merit, in view of the numerous motions and objections raised with reference to their interests in the subject matter. In view of these proceedings it does not lie in the mouth of plaintiff in error to say that intervenors were not in fact parties to the litigation or to object to their presence as parties; the provisions of the code relating to the joinder of parties are exceedingly liberal. (Comp. Stats. 4323, 4331, 4334, 4337, 4338, 4517.) The defense of misjoinder is only available to a party improperly joined. (30 Cyc. 140. Gotridge v. Van Atta, 27 O. S. 366, 370; Powers v. Bymcrats, 12 O. S. 293.) Informalities bringing in new parties are not seriously regarded. (Mason v. Alexander, 7 N. E. 435.) They may be joined at any stage of the proceeding. (Knopf v. Board, 173 Ill. 196.) Special permission is unnecessary. (Harberg v. Co., 27 N. E. 872.) Joinder of intervenors without the entry of an order is no justification for disturbing the judgment. (Kuhn v. McKay, 7 Wyo. 42; C. B. & Q. R. R. Co. v. Pollock, 16 Wyo. 321.) Plaintiff in error invoked the judgment of the Court in making intervenors parties. The alleged defect of parties in non-joinder of Blackburn and Weightman was waived, not having been suggested until after the trial. Moreover, the record does not show an interest in either of them. The point as to the capacity of the Gardner heirs to inherit is not in issue under the pleadings. The evidence does not show they were aliens in fact. (Gilman v. Thompson, 11 Ver. 843.) Only the state can question capacity of aliens to hold lands. (Oregon Co. v. Carstens, 16 Wash. 165; Keene v. Zindof, 81 Wash. 152; 142 Pac. 184; Prentiss v. How, 144 Pac. 388.) Alienage, even if established would not deprive them of the right to hold and dispose of the property involved in suit. (31 Stat. at L. 1939.) The heirship of intervenors was established in a proper pro-

ceeding in the probate court. While not following the exact form approved in Durell v. Abbott, 6 Wyo. 265 the petition contains its circumstances. A court of equity would have power irrespective of statute to entertain a suit of this character. (3 Kinney 1455.) It is unnecessary to set forth the statute under which plaintiff proceeded; any defect in the petition was undoubtedly cured by subsequent pleadings. (31 Cyc. 715.) The argument that Sections 807-811 Comp. Stats. 1910, establishing a conventional method of fixing the respective interests of tenants in common of a ditch, and perpetuating the record of such interests is unconstitutional since entirely immaterial. Judicial proceedings are provided for by section 812 Comp. Stats. 1910; the presumption of law as to the respective interests corresponding with water rights is a declaration of the rule which the Courts have applied independent of statute. (Gustin v. Harting, 20 Wyo. 1; Hamp v. State, 19 Wyo. 377.) The exception taken to the correction of descriptive errors in the water right decree was without prejudice to either party and was in accordance with the facts; it does not affect the validity of the judgment. The weight of the evidence was overwhelming in favor of the contention of defendants in error as to their ownership in the ditch; there was no testimony tending to show non-user or abandonment by plaintiffs and intervenors. The statute provides procedure for the establishment of abandonment of water rights which is exclusive of all other remedies. In order to fix the liability of a co-tenant, for his portion of expense incurred in repairs, the procedure prescribed by statute must be followed which was not done in this case. (38 Cyc. 53.) The evidence is the most effective argument in support of that part of the decree directing the construction of a water division box; an apportionment of costs was to the benefit rather than the prejudice of plaintiff in error; exact justice would have required the Court to impose the entire burden of this expense upon plaintiff; if the court in its statutory discretion

erred in its apportionment of the costs, the error is not reviewable. The proceedings in error are obviously frivolous and without merit and the rule with respect to the taxation of costs in frivolous appeals should be applied. (C. S. 5110 Syndicate Imp. Co. v. Bradley, 6 Wyo. 171; Gramm v. Sterling, 8 Wyo. 527.

BLUME, Justice.

This is an action to quiet title to two-thirds interest in the Park ditch and the alleged right of water of plaintiff's intestate. The case was brought by Frederick J. Ihmsen, as administrator of Thomas Gardner, deceased, against Fred F. Bamforth and Mary Bamforth. The latter did not appear, and is not connected with these proceedings in error. The administrator will be hereinafter referred to as plaintiff and Fred F. Bamforth as the defendant, he being plaintiff in error herein. The petition originally contained three causes of action, the first two claiming damages for interference with water rights and the ditch in question. The heirs of said Gardner and C. P. Arnold intervened and filed pleadings in the cause. The trial of the case was commenced before a jury, but during the trial the claims for damages were dismissed, the jury were discharged, and the trial proceeded before the court without a jury, as an action in equity for quieting title. The question, therefore, raised in the court below of misjoinder of causes of action and of misjoinder of parties, connected herewith, are eliminated from the case. The defendant has brought this case here by petition in error from the judgment entered below, after the filing and overruling of a motion for a new trial. Numerous errors are assigned; those not discussed herein we have fully examined, but find not well taken, or unnecessary to be decided. The chief assignments of error, however, are herein fully taken up and discussed.

1. The defendant objects that the administrator herein had no right to act as such because he was clerk of the

district court of Albany County. We cannot agree with
counsel for defendant that the attack thus made on the
order of appointment is direct, but on the contrary believe
that this is clearly a collateral attack. (23 Cyc. 1062, 1064.)
It is true that ordinarily a judgment is binding only on
parties and their privies, and not on strangers to the re-
cord. (23 Cyc. 1280.) But not every one who is a stranger
to the litigation is at liberty to attack a judgment rendered
therein. There would be no justification in permitting
anyone to intermeddle therein who has no direct concern
therewith. The stability and sancity of judgments would be
destroyed if anyone whatever could at any time attack them
at pleasure. It is and should clearly be the law, consonant
with public policy, that only those are and should be able
to do so who can show a substantial interest in avoiding them
—an interest which the law is bound to protect. (Black on
Judgments (2nd Ed.) §260; 23 Cyc. 1068; Brandt v. Meade,
17 Ariz. 34, 148 Pac. 297; In Re Pepin, 53 Mont. 240, 163
Pac. 104; Heard v. Vinegard (Tex. Civ. App.) 212 S. W.
489; Delling v. Bill (N. J. Eq.) 108 Atl. 761; Bonella v.
Maduel, 26 La. Ann. 112; Houston Oil Co. v. Hayden, 104
Tex. 175, 135 S. W. 1149; Harpold v. Doyle, 16 Idaho 671,
102 Pac. 158; Amy v. Amy, 12 Utah 278, 42 Pac. 1121;
Glass v. Gilbert, 58 Pa. St. 266; Riland v. Eckert, 11 Harr.
220; Grasmeyer v. Beeson, 18 Tex. 753, 70 A. D. 309;
Grant v. Hill (Tex. Civ. App.) 30 S. W. 952.) What dif-
ference could it make to the defendant in this case as to
who was appointed administrator of the estate of Gard-
ner? What direct interest could he have therein? We can
think of none. In this action defendant is dealing with
the administrator, an entity as such, and it does not
directly concern him so far as we are able to perceive, as
to whether that entity is called A, B, or C, and hence it
has been almost universally held that the appointment
made and the qualifications of the appointee are not sub-
ject to collateral attack by anyone. (23 C. J. 1088-1089;
Jordan v. Railway Co., 125 Wis. 581, 4 Ann. Cas. 1113,

and note collating the cases.)   If, of course, the court had
no jurisdiction at all to make the appointment, a different
question would arise, but such is not the case here. In Lar-
sen v. Union Pac. R. R. Co., 70 Nebr. 261, 97 N. W. 313, the
court said:

.   "The jurisdictional facts are the intestacy of the de-
ceased and her residence in the county where the applica-
tion is made.   The competency of the person making the
application, or of the person nominated for administrator,
goes, not to the authority of the court to make the appoint-
ment, but to the manner in which the authority shall be
exercised. * * * * When a petition is presented to the
county court, showing the intestacy of the deceased and
her residence in the county where the petition is presented,
it shows all the jurisdictional facts, and the competency
of the party making the application or proposed for ad-
ministrator, for jurisdictional purposes is immaterial."

In Sadler v. Sadler, 16 Ark. 628, the court said:

"Whether the probate court had granted the letters to
the right or wrong person were not questions for the jury
to determine.   Such questions could only properly arise
on a direct proceeding to review the action of the Probate
Court in the matter."

·  To the same effect is Taylor v. Hosick, 13 Kans. 518,
527.

§ 6777 of Wyoming C. S. 1920 enumerates the persons
who are incompetent to act as administrator and does not
therein embrace the clerk of the district court.   Under
§ 6745, when an estate is of the value of $500 or less, he is
competent to act substantially as a *quasi*-public adminis-
trator, even though he performs most of the duties enumer-
ated in the statute and referred to in the brief of counsel
for defendant.   The plaintiff was not appointed under the
latter section, but construing these two sections together,
it would seem clear that at least no jurisdictional question
is involved in appointing such clerk.   The case is unlike
those cases wherein the person acting as judge appoints

himself, since the appointment under our statute must be
made by the court or judge and cannot be made by the
clerk.   Nor do the constitutional provisions that the
salary of a public officer shall not be increased during his
term, and that they shall receive stated salaries, affect the
case.   These provisions probably refer to the money pay-
able out of the public treasury.  (Board v. Hackel, 21 Wis.
620.)  No provision is made that these officers shall not do
any other ·work for pay, and it would seem that had that
been the intention, the constitution could· easily so have
expressed it.  (See Bruce v. Dickey, 116 Ill. 527, 585, 6 N.
E. 435.)  In any event that point can be determined when
the question of his compensation comes before the lower
court.   These constitutional provisions do not, in terms,
prohibit the occupant of the office of clerk of the district
court to act as administrator, and we think that the de-
fendant cannot here question his appointment.

2.   Defendant contends that an administrator has no
capacity to sue in an action to quiet title, and cites in sup-
port thereof Travelers Ins. Co. v. Childs, 25 Colo. 360, 54
Pac. 1020, upon which also is based the text in Kinney on
Irrigation and Wiel on Water Rights.   Other cases are
cited from states in which the administrator has, primar-
ily, nothing to do with real estate, and in such case would
have no right to bring such action.   § 6835 of Wyoming
Comp. Stat. 1920, as amended in 1919, now specifically au-
thorizes such actions by the administrator, but that amend-
ment was passed after the commencement of this action
and has no bearing on this case.   § 6834 provides that the
executor or administrator must take into his possession all
the estate of the decedent, ·real and personal.   Under §
6835, prior to the amendment of 1919, he had the right to
bring actions for the recovery of real property, or for the
waste, destruction, or injury thereof.   Under § 6829, which
counsel for appellant have evidently overlooked, the ex-
ecutor or administrator is entitled to the possession of all
real property and the rents and profits thereform, and he

must preserve the improvements thereon.  The section further provides:

"The heirs or devises may themselves or jointly with the executor or administrator, maintain an action for the possession of the real estate, or for the purpose of quieting title to the same, against anyone except the executor or administrator; but this section shall not be construed as requiring them to do so."

These provisions clearly contemplate that during the administration of the estate, the administrator or executor shall have not only the possession of the real estate, but that upon him further devolves the duty fully to protect and preserve it.  § 6234 of our statute provides:

"An action may be brought by a person in possession by himself or tenant of real property against any person who claims an estate or interest therein, adverse to him, for the purpose of determining such adverse estate or interest."

This section is quite comprehensive and to hold that an executor or administrator in possession is excluded from the benefits thereof would seem to demand a construction thereof that is unwarranted.  The right of possession, and the duty to preserve the estate would seem to require rights of action commensurate with such duty, and we think that the right to bring an action to quiet title is one of these.  The holding of other courts under similar statutes is quite persuasive.  The Supreme Court of Colorado, under probate sections similar to ours, passed in 1903, no longer holds to the rule laid down in Travelers' Ins. Co. v. Childs, supra, but now holds the contrary.  (Galligan v. Hayden Realty Co., 62 Colo. 477, 163 Pac. 295.)  In a note in Ann. Cas. 1913 A, 996, it is said:

"It may be stated as the general rule, that where either by will or by statute, the personal representative is given the right to the possession of the real estate, he can maintain an action to quiet title, or remove a cloud from the title to real property of the decedent."

As early as 1860, in the case of Curtis v. Sutter, 15 Cal.
259, the California Supreme Court, under statutes, so far
as we can judge, exactly like ours, held that an executor
or administrator could bring such action, and that court
has adhered to that ruling ever since, although in Jones
v. Throckmorton, 57 Cal. 368, followed by this court in
Cook v. Elmore, 25 Wyo. 393, 171 Pac. 261, it was held
that an administrator has no right to bring an action to
have a legal title conveyed to him. (Pennie v. Hildreth,
81 Cal. 127, 22 Pac. 398; Collins v. O'Laverty, 136 Cal. 31,
68 Pac. 327; Rice v. Carey, 170 Cal. 748, 804, 151 Pac. 135,
138.) To the same effect are Newport v. Taylor, 16 B. Mon.
699, 781; Laverty v. Sexton & Law, 41 Iowa 435; Berry
v. Howard, 26 So. Dak. 29, 129 N. W. 526, 26 Ann. Cas.
994; Ladd v. Mills, 44 Or. 224, 75 Pac. 141; Butts v. Purdy,
63 Or. 150, 125 Pac. 313, 127 Pac. 25; Jameson v. Goodwin,
43 Okl. 154, 141 Pac. 767; Smith v. Stiles, 68 Wash. 345,
123 Pac. 448; Blakemore v. Roberts, 12 N. D. 394, 96 N.
W. 1029; Quinton v. Neville, 152 Fed. 879; 1 Ross Probate
L. & P. 433.) Hence we are constrained to hold that the
action herein was rightly brought. As to the extent of
the relief to which an administrator is entitled, if he prose-
cutes the action alone, it is not necessary to decide.

3. Were the heirs of Gardner properly made parties in
the case? Counsel for the defendant contend that they
were not, because no proper application or order was made
permitting them to come in, and that hence they are inter-
lopers. Defendant in his motion filed May 18, 1917, moved
to strike the third cause of action, among other reasons,
because the heirs of Gardner were not, but should be,
joined as parties plaintiff or should alone be plaintiffs
herein. The same point was urged in the demurrer filed
March 25, 1918, and also in the answer filed June 18th,
1918. In the reply filed on December 14th, 1918, plaintiff
consented that the said heirs should be made parties to the
action. Thereupon in the demurrer filed to the reply on
December 23, 1918, defendant objected to the heirs coming

in, claiming it was then too late. This demurrer was overruled. On April 11th, 1919, the heirs filed their petition of intervention, alleging that they appear as parties in pursuance to the order of the court. A so-called "demurrer and answer" was filed to this petition of intervention by the defendant on April 21, 1919, objecting that the petition of intervention aforesaid was filed in the wrong court; alleging that it contains no showing that the parties are actually the heirs of Gardner; denies each and every allegation contained therein; asks that the parties be compelled to set forth their interests, and ends by asking affirmative relief against them. There is a ruling by the court on this "demurrer," overruling it on Sept. 12th, 1919. Then an "answer" was filed by defendant to this petition of intervention on September 17th, 1919, and for the first time, as against them, directly alleges that the said heirs have now no right to come in as parties, but again asks affirmative relief against them.

Passing over the argument of counsel for the intervenors that these proceedings were the result of defendant's insistence that the heirs should come in as parties, it is apparent, that when the court overruled the demurrer to the reply of plaintiff, it clearly, in effect, granted the right for the heirs to come in as parties. And when the court overruled the so-called demurrer of defendant to the petition of intervention of the heirs, while the question was not raised as expressly as would have been on a motion to strike, still, it would seem that the court at that time impliedly granted its permission to the heirs to be parties, or it at least recognized their petition and them as parties in the cause. So, too, it would seem, that the defendant, by asking affirmative relief against the intervenors, recognized them as parties. Issues were by him joined with them, the case was tried on its merits with them as parties in the cause, the judgment of the court recognized them as parties, and we fail to see how the court could have more effectually, by granting leave upon formal application,

permitted them to have come into the case as parties. While generally, where the right of intervention is in the discretion of the court, application to intervene should be made, and leave granted by the court, still the absence of such application and leave, where issues have been fully joined with them, does not go to the jurisdiction, but must be treated as an irregularity only. It has been held that nonjoinder of parties is cured when the party who should have been joined comes in voluntarily, files a pleading and agrees to the steps already taken. (Speyer v. McNamara's Adm'r., 144 Ky. 774, 139 S. W. 1092; 145 Ky. 300, 139 S. W. 1183; Robbins v. Fitzgerald, 75 Wash. 617, 135 Pac. 656; Hurt v. Miller, 95 Va. 32, 27 S. W. 831.) The Supreme Court of Iowa held that the overruling of a motion to strike the petition of intervention is tantamount to granting leave to file it. (Ringen Stove Co. v. Howers, 109 Ia. 175, 80 N. W. 318, citing Williams v. Ins. Co., 50 Iowa 563; Rumsey v. Robinson, 58 Ia. 230.) In Weber v. Naltner, 8 Nisi Prius (Ohio) 324, the court said:

"Where, without formal leave, the party did come in, and his application was entertained by the court, and passed upon, all of which the record shows, the very action of the court is equivalent and more than equivalent to a leave to come in."

In the case of Edgar v. Emerson, 235 Mo. 552, 139 S. W. 122, the court said:

"Although there is no order of court shown in the abstract admitting Huff to be a party, yet the pleading filed by him recites that it was filed by leave, and in the final decree the court recognizes him as a party, and his rights as such were adjudicated. Besides the plaintiff's petition recognizes that the estate of Harriet Emerson is interested in the question of the suit and her unknown heirs are made parties defendants. We hold that under these circumstances Huff, as administrator, was a party."

(See also Stone v. Person, Circuit Judge, 105 Mich. 234, 63 N. W. 79; Crow v. Straus, 14 Ky. Law 206; Hacken v. Isen-

berg, 210 Ill. App. 120; State v. Bank, (Nebr.) 170 N. W. 901.)

Counsel for defendant apparently further take the broad position that when the intervenors were not brought into the case as plaintiffs in the first instance, they could not be brought in subsequently. Our statute, however, is liberal in regard to bringing in new parties into the cause. § 5600 provides that when determination of the cause cannot be had without bringing in other parties, the court must order them to be brought in, or dismiss the action without prejudice. § 5707 provides that parties may be added before or after judgment. § 5593 provides:

"Any person may be made a defendant who has or claims an interest in the controversy adverse to the plaintiff or who is a necessary party to a complete determination or settlement of a question involved therein."

The above and other sections of the Code indicate that it was the idea of the makers of the Code to adjudicate in one action the rights of the parties in the subject of the action, so far as it could properly be done. (Fental v. Sampliner, 4 O. C. D. 171.) And we think that an action to determine and quiet the title to waters is peculiarly one of those actions wherein this idea may well be carried out. Under similar statutes, and in a similar case, the Supreme Court of Oregon, in Hough v. Porter, 51 Or. 318, 95 Pac. 732, said:

"We are of the opinion therefore that much discretion must be allowed the trial court in such cases, and that it comes within the reason and spirit of the statute to hold that all who may have an interest, directly or indirectly, in the subject-matter of the suit, may, by order of the court, be made parties thereto."

Now if the court had the power to order parties to be brought in who are interested in the suit, it would seem logically to follow, that it has the right to recognize parties as such who come in voluntarily. In such case the court is simply saved from making and entering the formal

order bringing them in. Besides, section 5601 provides that any person claiming an interest in property, in any action for the recovery of real or personal property may intervene therein. It has been held that an action to quiet title is in effect an action to recover real property. (Townsend v. Driver, 5 Cal. App. 581, 90 Pac. 1071. See also Phillips on Code Pleading, § 459.) § 6829 provides, as before mentioned, that the heirs may separately or jointly with the administrator or executor bring an action to quiet title, and we do not think that a court of equity should be powerless to enforce the right herein given, at least where the consent of the plaintiff in the action is given, as in the case at bar. 2 Chitty on Practice, 492, says:

"The principle of the law of intervention is, that if any third person consider that his interest will be affected by a cause which is depending, he is not bound to leave the care of his interest to either of the litigants, but has a right to intervene or be made a party to the cause, and take on himself the defense of his own rights, provided he does not disturb the order of the proceedings. The intervenor may come in at any stage of the cause."

In the case of Gibson v. Ferrell, 77 Kans. 454, 94 Pac. 783, the court said:

"The application to intervene falls within no provisions of the code of civil procedure, but notwithstanding this fact, the district court, acting upon principles of manifest justice may, in cases not covered by the code, permit one, not a party to a suit, to intervene, either before or after judgment, for the protection or advancement of some right with reference to the subject matter of litigation which he holds."

In Texas, in the absence of a statute on intervention, it was held that intervention should be permitted where equity demanded it. (Pool v. Sanford, 52 Tex. 621, 633; Whitman v. Ellis, 51 Tex. 425.) In New Mexico it is held that the statutes of intervention apply only to actions at law, and do not prevent a court of equity to give permis-

sion to intervene. (Flournoy v. Bullock *et al.*, 11 N. M. 87, 102, 66 Pac. 547; Union Trust Co. v. R. Co., 8 N. M. 327, 43 Pac. 704.) The same seems to be.the holding of the Supreme Court of Nebraska. (State v. Bank, 103 Neb. 194, 170 N. W. 901.) And it appears now to be generally recognized that a court of equity has the right to grant permission to intervene in a proper case. (11 Ency. Pl. & Pr. 499, 21 C. J. 341.)

At the time that the ·heirs came in as intervenors the court had jurisdiction of the parties and of the subject of the action. Even if the third cause of action of plaintiff was subject to demurrer, though the court had no authority under the ·allegations as therein then contained to render judgment thereon, it did not by reason thereof *ipso facto* lose jurisdiction; it still had power to permit any necessary amendments to be made and pleadings filed that would state a cause of action; the case was still within its full control, and it had full and complete power to do all legal and proper things, including the bringing in of new parties, in order to finally dispose of the case properly. We must accordingly hold that the intervening heirs duly and legally became parties herein. The claim of the heirs was set out more fully than the claim made in the third cause of action of plaintiff, but it was essentially the same, and there was not, as counsel for defendant claim, a substitution of entirely new parties. (Lowell v. Gridley, 70 Cal. 507, 11 Pac. 777.)

4. What rights, then, did the intervening heirs have, after legally coming into the case? Were they bound by what had already been done, or what might thereafter be done by the original parties in the cause? If such were the case, then, clearly, their rights might be of no benefit. They became actors in the case. To make their rights effectual, they must, subject to the authority of the court reasonably to control the proceedings in the case, necessarily have the same power as the original parties to the cause. (Kerr, Pl. & Pr. § 671; Moran v. Bonynge, 157 Cal.

295, 107 Pac. 312.)   They might not at all be satisfied with the allegations as they stood at the time of intervention; to bind them thereby might in certain cases be positively detrimental to their interests, and the right to intervene, therefore, would be in fact an injury.   Hence, they have the power to file pleadings of their own.   Doke v. Williams, 45 Fla. 248, 34 So. 569; Eastmore v. Buckley, 113 Ga. 637, 39 S. E. 105; or they may adopt part or all of the pleadings already filed.   (Hamilton v. Lamphear, 54 Conn. 237, 7 Atl. 19.)   A petition of intervention, at least where it asks affirmative relief, may be demurred to; Shepard v. Murray County, 33 Minn. 519, 24 N. W. 291; and an affirmative judgment may be rendered against an intervenor.   Braithwaite v. Aiken, 3 N. D. 365, 56 N. W. 134; the intervening heirs in this case stood before the court as to the nature of their title and the object of their demand, in the character of plaintiffs, and were governed in their pleadings by the rules of practice which apply to plaintiffs in principal demands.   (Clapp & Co. v. Phelps & Co., 19 La. Ann. 461; 92 Am. Dec. 545; Allen v. Clark Co., (Nev.) 176 Pac. 259.)   They were entitled to have their claims, properly set up by them, determined and adjudicated.   (17 Am. & Eng. Ency. of Law, 185; Elliott v. Ivers, 6 Nev. 287; Poehlman v. Kennedy, 48 Cal. 201; Field v. Gautier, 8 Tex. 74.) Speaking of the rights of an intervenor, Pomeroy on Remedies & Remedial Rights, page 466, says:

"The same rule governs his rights which govern those who originally sue or defend.   The proceeding by intervention is not an anomalous one, differing from other judicial controversies, after it has been once commenced. It is, in fact, the grafting of one action upon another, and the trying of the combined issues at one trial, and the determining them by one judgment."

In Fleming v. Seeligson, *et al.*, 57 Tex. 524, 532, the court said:

"As has been often said, it is the policy of our jurisprudence to encourage the settlement in one and the same

suit of all matters of litigation concerning the subject
matter in controversy. To this end, a third party by leave
of court can intervene when he has such interest in the
subject matter, that had he first brought the suit as sole
plaintiff, he might have recovered in whole or in part.
*   *   *   Having due regard to the rules of practice, that
the suit as between the original parties shall not be un-
reasonably delayed, it is believed that otherwise the inter-
vention may be considered in the nature of a new suit, by
which the rights of either the original plaintiff or defend-
ants may be contested.''

In Muhlenberg v. Tacoma, 25 Wash. 36, 52, 64 Pac. 925,
the court said:

''After he has intervened, it is the duty of the court to
dispose of the whole controversy between the original
plaintiff and defendant and the intervenor so that the in-
terests of the intervenor shall be completely protected. If
this was not to follow, the right to intervene would be a
barren one.''

5. This brings us to the question raised by counsel for
defendant that the third cause of action of the plaintiff
herein does not state facts sufficient to constitute a cause
of action of quieting title. From what we have hereto-
fore said, it follows that the case does not at all depend
upon that. The decree was in favor of the intervenors.
If the petition of intervention on behalf of the intervening
heirs is sufficient to constitute a cause of action to quiet
title, that is sufficient herein. We think that it does. It
alleges, among other things, that such heirs together with
the intervenor Arnold own and are in possession of certain
lands in Albany County together with two-thirds interest
in the Park ditch, and together with certain water right
appropriations and water rights which had previously been
adjudicated and determined by the board of control of
Wyoming; that defendant has no right or title to said
two-thirds interest in said Park Ditch, and in two-thirds
of the water therein; yet defendant denies said right of

intervenors and wrongfully asserts some claim thereto, interferes therewith and threatens to deprive intervenors of the use and enjoyment thereof; that they are unable without said rights to care for or make use of the said lands, and that defendant's claim creates a cloud on their title. The prayer is for full relief. We deem these allegations amply sufficient to constitute an action for quieting the title under the statute. The necessity for the water on the lands of these intervenors is, we think, sufficiently indicated. The reference to the decree of the board of control is also, we think, in the absence of a motion to make more definite and certain, sufficient. The case of Davis v. Chamberlain, 51 Or. 304, 98 Pac. 154, is not in point on this question, for the decree relied on in that case was sought to be shown in order to prove an estoppel, which is not true here. Nor is the contention well taken that the petition should show that there was no adequate remedy at law. (32 Cyc. 1353.) The statute gives the party in possession of property the right to bring an action to quiet title against a party making an adverse claim thereto. Actual interference is not at all necessary. (Peregay v. Sellick, 79 Cal. 568, 21 Pac. 966.) We might as well say in this connection that the record shows such adverse claim by the defendant, it being in fact set out in the answer, and hence the claim that there was an adequate remedy at law is not well taken.

6. We have, then, a case where the court had jurisdiction of the subject matter, and of the parties, with a cause of action stated on behalf of at least some of the parties claiming rights against the defendant. And we now come to the intervening petition of intervenor Arnold. The proceedings relating to his coming in as a party were substantially the same as those in connection with the Gardner heirs. He was recognized by the court as a party by refusing to sustain a demurrer to his pleading, as well as by giving him rights in the decree. His intervening peti-

tion is distinctive in what it fails to allege, and outside of the caption is as follows:

"C. P. Arnold, being made a party to the above entitled action by order of the court herein, admits that he is an owner of an undivided interest in the lands, ditch and water rights described in the petition filed by F. J. Ihmsen, plaintiff, and awaits the disposition and orders of the court in the premises."

It may be that the court may well be held to have the power to sustain a demurrer to such pleading, or ignore whatever claim such pleader may have, and adjudicate it against him. But we do not believe that we should hold that under the circumstances a court of equity is compelled to do so. Even if he came in as a voluntary party, we think his standing in court, after being recognized as a party, should be held to be the same as though he had been formally ordered to be brought in as such by an order of court. Now, as we have heretofore shown, the court had the power to bring him in, but it had no power to make him plead, or direct him what pleading he should file. If such new party fails to plead, or plead sufficiently, he does so no doubt at his peril. But it does not follow that a court of justice must be untrue to its name, and we think that it should, in such case, have the right pursuant to the power to settle the whole controversy, to settle it in accordance with equity. This question is fully discussed in Hough v. Porter, 51 Or. 318, 439, 98 Pac. 1093, where the court said on pages 1109-1110:

"* * * but Small came into this suit under the order of the court, issued for the purpose of enabling it to adjust the rights of all, with a view, not only to the entry of a decree that will be effective, but that a multiplicity of suits might be obviated. The trial court having this authority (B. & C. Comp. § 41), it follows that this jurisdiction carries with it all the power essential to the making of such order effective. If, then, some of the parties neglect or refuse to file pleadings asserting their rights, or,

having done so, have presented them in such manner that an enforceable decree, or one in harmony with the spirit of the order, cannot be entered, and it appears that the cause has been tried and evidence taken and submitted, the court may, in the exercise of its sound discretion, either direct the pleadings to be amended to conform to the proof, or treat them as amended, and enter a decree accordingly. Such discretion is essential to the effective exercise of the equity jurisdiction in this class of cases. * * * It thus appears that courts of equity are not necessarily bound in all cases by the rules of practice usually invoked. Now, as heretofore held, the court may direct all parties interested, or claiming any interest in, the subject-matter of litigation, to be brought in and require them to interplead with reference to each other (95 Pac. 732, 749) ; but it cannot make them plead any certain facts. It must leave it to them to determine the course to be pursued in that respect. But if, in the exercise of such rights under the order, such parties default, or fail properly to plead or to offer proof, they assume the risk thus incurred, and are necessarily impelled to abide the result to follow; and the court, in the exercise of its discretion, may either enter a decree affecting their interests, or not, as it may deem just and equitable.''

7. Defendant claims that the heirs of Gardner are aliens, not entitled to inherit any real estate in this state; that the property escheated to the state and that the latter should have been made a party. The questions thus raised present many difficulties, and we have not found the proper solution thereof easy. The record shows that the decedent died some time in the month of November, 1916, the exact date not appearing. On Sept. 7, 1918, an order determining heirship was entered in the district court of Albany County, apparently pursuant to the provisions of §§ 6979 and 5980 of our statute. That decree upon its face shows that the heirs are not descendants, but collateral heirs; that the heirs inheriting eight-ninths of the

estate are residents of Ireland. The residence of the others is not therein shown, but the proof shows that they are all residents of Ireland. We might dispose of this question by saying that evidence of alienage must be clear and satisfactory (2 C. J. 1045); that it is immaterial where the heirs resided at the time of the entering of the foregoing decree of September 7th, 1918, or at the time of the trial, and that this does not show that they lived in Ireland at the time of the death of the decedent, which is the time when the real property of the estate vested in the heirs, subject to indebtedness, and is the time material on that point. But lest it appear too technical to dispose of these points in that manner, we shall go into the subject more fully, and shall assume, without deciding, that from the residence above mentioned, not explained, arose the presumption that the heirs were citizens of Great Britain. (11 C. J. 786; note to 8 L. R. A. N. S. 1245.) Const. Art. I, § 29, of Wyoming, provides that resident aliens are entitled to inherit property the same as citizens. § 7005 of our statute provides that "the alienage of the descendants shall not invalidate any title to real estate which shall descend from him or her." But we have no statute permitting collateral heirs, that is to say, heirs who are not descendants, who are non-resident aliens, to inherit, and hence the common law rule would obtain. Under that rule, a non-resident alien has no inheritable blood and cannot take real estate by descent. (2 C. J. 1057.) Under treaty with Great Britain, however (31 U. S. at Large, 1939), it is provided:

"Where on the death of any person holding real property—within the *territories* of one of the contracting parties, such real property would by the laws of the land, pass to a citizen or subject of the other, were he not disqualified by the laws of the country where such real property is situated, such citizen or subject shall be allowed a term of three years in which to sell the same, this term to

be reasonably prolonged, if circumstances render it necessary, etc.''

It is contended that the term ''territories'' above mentioned must be construed as applying only to one of the territories of the United States, as distinguished from a state. The rule laid down by the Supreme Court of the United States is, that:

''Where a treaty admits of two constructions, one restrictive as to the rights that may be claimed under it, and the other liberal, the latter is to be preferred.'' (Havenstein v. Lynham, 100 U. S. 483, 25 L. Ed. 628.)

We accordingly think that the term ''territories'' as used in the above treaty is to be construed in its broader sense as meaning and including any area or locality under the dominion of the United States. While we have no authority direct on that point, yet it has always, so far as we have found, been given that meaning by the courts in discussing the above treaty or one similar to it. (Schultze v. Schultze, 144 Ill. 290, 33 N. E. 201, 19 L. R. A. 90; Ahrens v. Ahrens, 144 Ia. 486, 123 N. W. 164, Ann. Cas. 1912 A. 1098; Pierson v. Lawler, 100 Nebr. 783, 161 N. W. 419.) This treaty will control and suspend the rule of the common law in force in this state during such time that the rights conferred thereby are in force or extended by the courts pursuant thereto. (2 C. J. 1065.) On the nature of the title acquired by the non-resident aliens by virtue of the treaty, it has been succintly said in Ahrens v. Ahrens, supra, as follows:

''There is much discussion in the cases as to the nature of the title which non-resident aliens hold under the terms of the treaty. Some authorities denominate it a base or qualified fee, and others a determinable fee. The terminology is not of controlling importance. That the right to sell carries with it the ownership as a necessary incident to the power of sale is held by all the authorities. That such ownership was something less than a fee simple absolute is also quite beyond discussion. That the remainder

of such title vested in the resident heirs, and that such remainder drew the full fee simple title into such resident heirs upon failure of the condition upon which the non-resident aliens took their title, seems to us clear.''

(See also Wunderlee v. Wunderlee, 141 Ill. 40, 33 N. E. 195, 19 L. R. A. 84; Pierson v. Lawler, supra; Scharpf v. Schmidt, 172 Ill. 255, 50 N. E. 182.) Counsel for defendant were, therefore, wrong in the contention made in the court below that the non-resident heirs in this case were unable to inherit. The ownership of the latter acquired under the treaty carried with it all incidents connected therewith. Subject to the rights of the administrator, they had the right to the possession of the property inherited, together with the use and enjoyment thereof. Should that possession or enjoyment be disturbed, they had the right to defend it in court. It has been held that they may bring an action in partition. Kull v. Kull, 37 Hun. 476; Wunderlee v. Wunderlee, supra; Scharpf v. Schmidt, supra; and it would seem clear that in order to make the property saleable, so that it might be disposed of in accordance with the provisions of the treaty, they also had the right to bring and prosecute an action to quiet title or join the administrator therein as they did in this case. It is, therefore, clear that when the intervening heirs filed their petition in intervention herein on April 11, 1919, less than three years after the death of decedent, they had the right to become party litigants herein. Even if the state had a contingent interest in said property, it was not a necessary party at the time; and had judgment been entered herein within three years after the death of Gardner, it could not in this action be assailed in any way by reason of the question of alienage. The cause was tried on November 17th and 18th, 1919, whether within three years after the death of Gardner does not clearly appear. The case was taken under advisement and judgment was entered March 24th, 1920, and the question arises whether or not, because that date was more than three years after·

the death of the decedent, judgment for the heirs was erroneous. Counsel for the heirs contend that only the state could raise the question of alienage. Without deciding the proposition, we may say that the cases cited by them, such as Oregon Mortgage Co. v. Carstens, 16 Wash. 165, 47 Pac. 421, are not in point. In these cases the property had been acquired by purchase deed, or other acts of parties. In such cases the state only can raise the question. (2 C. J. 1051.) But it may at least be questioned, since aliens have no inheritable blood, whether the same rule obtains where the property has been acquired by descent. (See 2 C. J. 1058; Wunderlee v. Wunderlee, supra.) Again, it is maintained that the defendant cannot assail, collaterally, the decree of heirship heretofore mentioned. Without deciding the question, it may be that the contention is correct, as applicable to the period of three years after the death of decedent. (Fisher v. Sklenar, 101 Nebr. 553, 163 N. W. 867.) The defendant, of course, had no interest whatever in the property of the decedent. Still he had the right to raise the question as to whether or not the action was brought or carried on by the real parties in interest, just as he had the right to raise the question as to whether or not an administrator has power to bring such action. He could not be disturbed by, or rights adjudicated against him in favor of, parties who had no interest in the controversy. (§ 5580.) If, therefore, the decree of heirship ceased to have validity when the time given under the treaty expired, and if the heirs were before the court seeking property which they could not hold, then it may be suggested that perhaps, in order not to go counter to public policy, the courts would not lend them aid. (Ales v. Eppstein, (Mo.) 222 S. W. 1012, and cases cited.) But we do not believe that all rights of the heirs in the property ceased *ipso facto* upon the expiration of the three years given under the treaty above mentioned, since that time might be prolonged if circumstances rendered it necessary. And the question as to what circumstances ren-

der such prolongation necessary is for the courts. (Fischer v. Sklenar, supra; Pierson v. Lawler, supra; Scharpf v. Schmidt, supra.)   It may be that the court below, having in mind the provisions of the treaty aforesaid, by the very entry of the decree herein, meant to extend such time. It seems, at any rate, that as against the defendant herein, it had that effect, and we cannot say that, at least in view of the then recent expiration of the three year period and in view of the pendency of this action, which might prevent the sale of the property inherited, the court was not justified in its action.

8.   The court in deciding on the water right to which intervenors were entitled took into consideration the adjudication by the board of control in favor of Gardner as follows:   30 acres in NE¼ NW¼; 10 acres in NW¼ NW¼ and 80 acres in N½ NE¼, all in section 18, T 16 N, R 75.   A pencil mark had been drawn through 75 indicating the range, and 74 had been substituted therefor. The evidence shows that Gardner owned no land in section 18, T 16 N, R 75, but that his land was located in Range 74.   The error was, therefore, merely a clerical error.   We think the court was right in its holding in that respect.   A similar situation exists with regard to defendant.   The board of control awarded a water right to him in the SW¼ of SW¼ sec. 32, T 17 N, R 75, this should have been evidently in sec. 31, T 17 N, R 74.   No contention was made on the point by plaintiff or intervenors, and the court in awarding the defendant the water claimed, adjudicated for the land as correctly described, in effect held that the error was clerical and in effect made the correction.   Hence no prejudice resulted to defendant from the action of the court.

9.   Defendant contends that Roland Blackburn and James Weightman should have been made parties to the action.   The point was first raised on motion for a new trial.   Under the holding of Gilland v. Union Pacific Ry. Co., 6 Wyo. 185, 43 Pac. 508, in the decision of which one

of the eminent counsel for defendant participated, this objection of defect of parties came too late.

10. The claimants introduced in evidence a petition drawn by the intervenor Arnold, sworn to December 17, 1901, wherein the defendant stated the ownership of the ditch to be one-third in himself and two-thirds in Gardner and Arnold. This petition appears to have been made with the intention that it should be presented to the board of control, but it never was. Another petition, of similar import, but omitting the name of Arnold was, however, subsequently presented to said board. Counsel for defendant claim that the evidence of the witness Arnold, who identified this petition sworn to December 17, 1901, should not have been received, because Mr. Arnold acted as attorney for the defendant. When the defendant was asked whether he employed Mr. Arnold to draw the petition and paid him $25.00 for the services he answered by a denial, and he also testified that he made the affidavit mainly for the accommodation of Arnold. Without saying as to whether the testimony was of such character as should have under our statute been excluded, we do not believe that the relationship of attorney and client was established by the evidence in this case, and unless that relationship was shown to exist, it was clearly admissible as an admission against interest.

11. The defendant claims that Gardner, during his lifetime, abandoned his water and ditch right. The burden of showing abandonment is on the party who asserts it (1 C. J. 11), and the evidence on the subject should be clear. The witness Carroll, when testifying on behalf of defendant stated that decedent had irrigated 200 acres of land for 15 years prior to his death. That is the nearest of any testimony in the record fixing any basis upon which a decree of abandonment could have been based at all. But from aught shown by the record, the amount of water to irrigate this acreage was the only water that came down to the lands of decedent. There is abundant evidence in the record to show the continuous use by Gardner of water for irrigation, although the record is not clear on the amount

used nor the amount available. There is also testimony that work was done on the ditch on behalf of decedent every year from 1910 on, but we cannot take the time to review the evidence on the subject. We cannot say that the lower court erred in refusing to find for defendant on this subject. Hence it is unnecessary to decide whether the statutory method for determination of abandonment is exclusive or not.

12.  Defendant complains that the court ordered a concrete division box to be constructed, apportioning the costs therefor in proportion to the respective water rights owned. We cannot say from the evidence that the court erred therein. There is in the record some evidence of ill feeling between the parties, and that a division box constructed of temporary material would wash out easily. The court, we think, had power to make the order it did herein, and we do not feel justified in interfering with its discretion as exercised in this case. It was said in Hough v. Porter, 51 Or. 444, 98 Pac. 1111:

"If at any time deemed necessary by it, the court should require the sheriff, or other officer or person as it may designate for the purpose, including an engineer or other assistant, as may be required, to fix at the points of diversion or other proper places suitable boxes or headgates, with a view to being able, in accordance with this decree, properly to measure, regulate and distribute the water between those who under this decree, may be entitled to the use thereof, the costs for which should be taxed against each in such proportion as the court may deem just and equitable."

13.  Defendant complains of the action of the court in striking out the evidence of the defendant showing that he built the Park ditch and while admitting that the witness was incompetent to testify against the administrator and heirs of Gardner now deceased, claims that the evidence should have been admitted against Arnold. That claim was not made on the trial and the court's attention was not directed to that point as it should have been. Aside from that, the record does not show that Arnold's interest in the

ditch is separate and apart from that of the interest of the estate. If not, the evidence was not admissible even against him under § 5807 of our statute, and we cannot, therefore, say that the action of the court in this matter was prejudicial.

14. Among the water appropriations claimed by plaintiff and intervenors was an appropriation made to Feast for 350 acres, shown in evidence of equal priority with that of defendant. Defendant denied this claim and contends that there is no evidence showing a transfer of this to the claimants. No conveyance from Feast was introduced in evidence. The ownership of the W½ NE¼ and NW¼ section 17 and the W¼ SE¼ section 8-16-74 however, for which there was under the appropriation allotted water sufficient to irrigate 300 acres is, we think, for the purposes of this action, sufficiently shown, mainly by identification of shaded portions on the map in evidence. We find, however, after diligent search, no evidence of ownership or possession in claimants for the S½ of SW¼ of said section 8, for which was allotted water sufficient to irrigate 50 acres. That land is nowhere indicated on the shaded portions of the maps in evidence. While this may be only a technical oversight on the part of claimants, still the burden to show their interest was on them, and we are not, upon the record, at liberty to do otherwise than to find that it was erroneous to decree to claimants the appropriation for the lands last mentioned, or permit the water for that land to run through the ditch in question.

15. Defendant claims that the decree of the court should have been more definite. The objection made as to the water right is not well taken. Cases from other states, wherein it was sought to determine the relative priorities of parties to water rights are not at all in point. This action was not brought to determine priorities; both parties claim their rights by virtue of the decrees of the board of control and no more. The court did not attempt to infringe upon or modify those decrees, but accepted them as controlling. We think that was correct, and inasmuch as these decrees state

definitely the various facts involved in priority of water rights, it was unnecessary for the court to restate them in the judgment rendered herein. The presumption is that the rights under these decrees continued. (Lower Latham Ditch Co. v. Irrigation Co., 41 Colo. 212, 93 Pac. 483; Ellis v. Annis & Boland (Ia.) 173 N. W. 282.) But in another respect the decree is defective and not supported by evidence. The court, of course, had no power whatever to authorize either of the parties to conduct a greater amount of water through the ditch than the capacity of the ditch right owned by them respectively warranted. Renewed litigation would no doubt ensue in the near future if such ditch right is not sufficient to carry the water. In this case the decree authorizes the parties to conduct water through the ditch, the defendant sufficient to irrigate 310 acres of land, the intervenors sufficient to irrigate 850 acres. All this water would have to be carried through the ditch at the same time in the early irrigation season, when the second appropriation of defendant Arnold would be of avail to him. Yet we find no evidence whatever in the record that the capacity of the interests in the ditch of the respective parties is sufficient to carry the water authorized by the decree to be conducted therein.

16. The petition of intervention on behalf of the heirs claimed two-thirds interest on behalf of themselves and intervenor Arnold. In the judgment rendered in the court below the court awarded to all the intervenors 850/1160ths and to the defendant 310/1160ths interest in the ditch, which is in the same ratio as the adjudication of water rights in the ditch by the board of control.

The case was tried by counsel for plaintiff and intervenors on the theory that under § 928 of the Wyoming Comp. Statutes 1920 the ownership in a ditch is fixed and determined by the proportionate interests of water conducted through it by the respective parties and that no proof of ownership in the ditch was necessary other than the proof of the adjudication of water rights made by the Board of Control through the Park ditch. Counsel for the defend-

ant claim that the section is unconstitutional. In the view
we take of the case, it is unnecessary to determine that point
here. The section of the statute referred to here is, in part
as follows:

"Unless the owners of ditches, canals and reservoirs (1)
make a record as herein provided, or (2) have a record
thereof made in some other manner, showing the relative
ownership of each interested party in such irrigation works,
said interests shall be established by the ratio between the
water rights of each water user to the total water rights
adjudicated under such irrigation works."

Then it further provides that these interests shall be
fixed by the issuance of a final certificate of appropriation
as shown by the records of the county clerk on Feb. 20,
1907 and that ten years adverse possession, as there defined,
shall bar an action for the recovery of an interest in the
ditch as above mentioned, showing the section to be at least
in part intended as a statute of limitations. §929 provides
for the filing of a joint affidavit by all the owners of a ditch,
showing their relative interests and covers therefor the
"making of a record" as contemplated in § 928. § 933 pro-
vides for having such record of relative interests made by
an action in equity, and covers the point of "having a rec-
ord made" as contemplated in said section 928. It is clear,
therefore, that § 928 can have no application where a record
of the interests of the parties is made or is caused to be
made. The case here is an action in equity. The very pur-
pose, in part, is to determine the relative interests of the
owners in the ditch and have a record made thereof, and
§ 928 can, therefore, have no possible application, except
only in case where adverse possession, as defined in that
section, is relied on, which is not true here. The fact that
a good cause of action is here stated under the general
statute providing for quieting title does not make any dif-
ference; the two sections of the statute are not in conflict;
both provide for an action in equity. We have heretofore
held that the board of control has no authority to determine

relative ditch rights. (Collett v. Morgan, 21 Wyo. 117, 128 Pac. 626.) In that case this court aptly said:

"The Board of Control had no power or authority to determine as between the parties the ownership or right to the use of the ditch. Its duties are confined to the distribution of the waters of the state between the several appropriators, the granting of permits to use the waters of the state for beneficial uses, to grant certificates therefor and the general supervision of such waters. Of course, in granting a certificate of appropriation, it should appear that the party has the means of conducting the water from the source of supply to the place of application. * * * There being a dispute between the parties as to the ownership and right to the use of the ditch, that question could not be finally settled by the board, but must be settled by the agreement of the parties or by a proper proceeding in a court of competent jurisdiction."

In the case of Hamp v. State, 19 Wyo. 653, 118 Pac. 653, Hamp was tried for the statutory offense of wilfully interfering with the headgate of an irrigating ditch without authority. In such action no record is made or is caused to be made of the relative interests, and in such case proof of ownership of a water right may well be taken as *prima facie* proof of an ownership in the ditch sufficient to carry the water even in the absence of a statute. The same presumption, or *prima facie* proof, might obtain in other collateral inquiries. But the case at bar is a direct proceeding to determine ownership in the ditch. The only presumption that can obtain in such case is that arising from use and possession, the extent of which is not shown herein. The action herein, therefore, was tried on the wrong theory. The maximum interest in the ditch that, under the evidence in this case, could have been allowed the intervenors was two-thirds; and the minimum to which the defendant was entitled was one-third, but the decree allows him less than that. This would seem to have been done on the theory that the relative, proportionate water rights controlled the relative proportionate ditch rights under a presumption arising un-

der § 928.   At any rate, judging from the decree herein
and some remarks between the court and counsel which ap-
pear in the record, it would seem that the court did not
weigh and pass upon the evidence adduced to show the in-
terests in the ditch, other than the evidence showing the
adjudication of water rights.   If it were possible for us to
say that the court had passed on all the evidence in the case
upon the subject of ditch rights and had not rested its con-
clusion on a presumption arising from § 928, then we might
simply modify the decree; but we are not able to so say, and
we see no alternative but to reverse the case and remand it
for a new trial.   We might add that if upon another trial
the lower court should find the relative ditch rights of the
parties to be other than heretofore found, and should adhere
to the determination that a concrete division box should be
constructed, then the cost thereof should justly be propor-
tioned among the parties as heretofore; namely, in pro-
portion to the water rights of the parties rather than in pro-
portion to the interests in the ditch owned by the parties,
since a division box is primarily constructed to divide the
water.   We might further add that it would at least be
proper that the provisions of Section 933 of the statute
be carried out, providing that the "court shall determine
the right of the several claimants to such ditch or ditch
right and determine all the facts necessary in the affidavit
hereinbefore prescribed."   Part of the purpose of this and
some of the preceding sections of the code were intended
to provide a permanent record of ditches, and we see no
reason why another action should be necessary to do this,
when that can well be done in the pending action.

The case is accordingly reversed and remanded for a new
trial.

*Reversed and Remanded.*

POTTER, C. J., and KIMBALL, J., concur.

ON PETITION FOR REHEARING

POTTER, Chief Justice.

Defendants in error have filed a petition for a rehearing in this cause, specifying as the only point to be considered that said defendants in error should be permitted to accept a modification of the findings and judgment suggested in this court's former opinion disposing of the cause upon the original hearing. In specifying that point, the petition refers to the statement in our former opinion that if we could say that the trial court had passed on all the evidence upon the subject of ditch rights, instead of resting its conclusion upon a presumption arising from Section 928, Comp. Stat. 1920, we might then simply modify the decree. (See the opinion as reported in 204 Pac. 345-358.) But it was further said in the opinion in that connection that ''we are not able to so say, and we see no alternative but to reverse the case and remand it for a new trial.'' And we are not now convinced that the case should be finally disposed of here by the suggested modification, or that a rehearing might result in a change of our view of the matter justifying such a disposition of the cause.

By the third cause of action upon which the case was finally submitted to the trial court, it was sought to quiet the title of the plaintiff, as administrator, to the alleged two-thirds interest of the decedent Gardner in the Park ditch, as well as the same alleged interest in the water appropriated and carried through the ditch. And it was alleged in that connection that the plaintiff was unable to agree with the defendant Bamforth upon the amount of the interest in said ditch owned by each, and that the plaintiff desired upon the filing of an affidavit or otherwise, to have the respective interests of the parties in such ditch and waters determined by the court. And the intervening petition of the heirs at law of the decedent Gardner admits and reaffirms each and every allegation of the plaintiff's petition, and alleges the absence of any right of the defendant Bamforth to the said two-thirds interest in the ditch, and

also the water rights for the irrigation of the Gardner lands, and prays that they be adjudged owners in fee simple of said two-thirds interest in the ditch, as well as in two-thirds of the water flowing therein.

The record shows also, by objection to testimony offered by the defendant, that counsel for the plaintiff and the intervening heirs contended that the relative rights of the parties in the ditch and the proportionate ownership thereof was to be determined according to the proportion of their adjudicated water rights through that ditch, and that any direct evidence showing by whom the ditch had been constructed, or other facts that might tend to show ownership aside from the proof of adjudicated water rights was inadmissible. The court, however, admitted, over such objection, some testimony as to the construction of the ditch, and evidence was also admitted as to repairs upon the ditch and the use of water through it by the respective parties. Two petitions signed by Bamforth, one of which was shown to have been filed with the Board of Control, were introduced in evidence by the parties opposed to Bamforth, containing an admission by Bamforth that he owned a one-third interest in the ditch, and the other parties a two-thirds interest. But the court, aside from a general finding in favor of plaintiff and intervenors upon the issues joined, found specially that the intervenors, collectively, owned an undivided 850/1160ths interest in the Park ditch, and the defendant Bamforth, 310/1160ths interest, ''corresponding with the water rights adjudicated and awarded to the said parties respectively, and to their respective predecessors in interest;'' clearly showing that such finding was based solely upon the proof of the adjudicated water rights, without considering any of the other evidence upon the subject, except possibly the evidence showing the use of the appropriated water through the ditch. And we remain of the opinion that this court should not dispose of the case by modifying the judgment upon evidence not considered by the trial court, and which would require a finding based upon such unconsidered evidence. (City of Rawlins v.

Jungquist, 16 Wyo. 403, at pages 435-437, 96 Pac. 144.)
Whatever might be considered the effect of the defendant's
admission in the petitions aforesaid, or the other evidence
on the subject, the question, one of fact, ought to be passed
upon by the trial court.

Nor do we think that the suggested necessity for end-
ing this particular litigation is sufficient to justify our dis-
position of the cause by a modification of the judgment, or
that it should be disposed of to secure the early installation
of a division box, to enable the parties to obtain the water
in accordance with their adjudicated rights. If the trial
court should not be disposed to hold that it has authority to
require the installation of such a box pending the action, as
prayed for in the petition, or that it is necessary, it would
seem that the division of the water might be temporarily
provided for under Section 946, Comp. Stat. 1920, authoriz-
ing the distribution of water from a ditch jointly owned,
where such joint owners are unable to agree relative to such
distribution, and authorizing the water commissioner to
take exclusive charge of the ditch for that purpose. With
the issues in the case much simplified by our decision dis-
posing of the other questions presented upon the original
hearing, there ought not to be much difficulty or delay in
bringing the cause to a final disposition upon a new trial;
and in any event, we think it necessary that the question of
the relative ownership of these parties in the ditch should
be determined in the first instance by the trial court upon
the proper theory as explained in our former opinion.

A further objection to disposing of the case by the sug-
gested modifications, is the inability of this court to make
the further findings required by Section 933, and the im-
propriety of its doing so, in the absence of any finding on
the subject by the trial court.

Our view of the statute providing for a record of the
ownership of ditches and other irrigation works and pre-
scribing a rule for establishing the same in the absence of
a record, so far as it applies to this case, seems to be fully
explained in the former opinion. But it is suggested in the

brief now filed that some of the expressions in that opinion with reference to the matter are broader than the case requires or the statute justifies. We are not sure that we understand what is intended by that assertion, or the further suggestion that the question be re-examined for the purpose of stating the limitations that may be thought needful in the accurate interpretation of the statute. The statute had our careful consideration at the time of the decision, and there was no intention to go beyond the necessities of the case in explaining our interpretation of it, and we do not now perceive wherein it may be thought that we had done so, unless counsel's suggestion in that respect refers to the exception stated in the opinion when declaring that Section 928 can have no possible application in an action brought as provided in Section 933, viz; "except only in case where adverse possession, as defined in that section (928) is relied on, which is not true here." That statement of the exception was not intended as a denial of the right of either of the parties to claim or assert such adverse possession in support of his or their alleged title in an action under Section 933, but as a recognition of such right, and it was stated that such possession was not relied on here for the reason that it was not urged before this court and we were not advised that the alleged title of either party was based in whole or in part upon the fact of such adverse possession; and it explained also the omission of further discussion concerning the exception stated, and that in holding Section 928 to be inapplicable we had reference only to the general provisions of the section declaring the rule for establishing relative ownership in the absence of a record made by the owners as provided in the statute or in some other manner.

The statute in question, now Chapter 70 of the Compiled Statutes of 1920, comprising Sections 928 to 933 inclusive, was enacted in 1907 as a part of an act amending and re-enacting several sections of the Revised Statutes of 1899, repealing certain other sections, and making new provisions, all relating to water rights and the supervision thereof, under a title containing the words, "prescribing

a method for recording and quieting the title to property rights and interests in irrigation works." . The original act was approved February 20, 1907, which accounts for the inclusion of that date in Section 928 in place of the words "the date of the passage of this act," found in the provision of the original act that the relative interests shall be fixed by the issuance of a final certificate of appropriation as the same appears of record in the office of the Board of Control and of the respective county clerks. The first section of the statute in question, (928) contains also a provision not mentioned in the former opinion, which tends to explain the general purpose of the statute, in connection with the other provisions, viz: "That every conveyance of a ditch, canal or reservoir, or any interest therein, shall hereafter be executed and acknowledged in the same manner as a conveyance of real estate and recorded as herein provided, and any such conveyance which shall not be made in conformity with the provisions of this chapter, shall be null and void as against subsequent purchasers thereof in good faith and for a valuable consideration."

That is the concluding provision of the section. The preceding provision that the relative interests shall be established by the ratio between the water right of each water user to the total water rights adjudicated under "such irrigation works" and "shall therefore be fixed by the issuance of the final certificate of appropriation" as the same appears of record is made to depend for its operation upon the failure of the owners to have a record made "as herein provided" or "in some other manner," showing the relative ownership of each interested party in "such irrigation works." The legislature clearly had in mind the possibility that a record might have been or might be made in some other manner than that provided in the subsequent sections. We need not go further in search of a reason for the thought of such a possibility than to suppose that the relative interests might be shown by recorded deeds or contracts, if sufficient in form and substance to constitute a record. But the statute provides two methods of making the required

record, aside from a record to be made "in some other manner." First, by the next succeeding section it authorizes the filing in the office of the Board of Control and of the county clerk wherein any ditch, reservoir or other irrigation works may be located, of an affidavit by "any person, persons, partnership or association of individuals, or corporation, joined in, signed, and sworn to by all the parties having an interest in such ditch or ditch right, "stating therein the name of the ditch, the ownership of said ditch, the interest each claimant owns therein specifically, the method of securing rights of way or irrigation works and the date of such procedure and referring to the records of the office of the state engineer or Board of Control, or both, relative to dimensions of irrigation works, their location, and adjudicated rights to water conveyed in or stored in such works, and such other information as may be deemed necessary."

Where that is done, the next section (930) provides that the facts stated in the affidavit shall be *prima facie* evidence of the truth thereof in any court of the United States, and that "no action for the recovery of the title or possession of such irrigation works can be brought after ten years from the time of the recording of such affidavit; provided, that during such ten years the claimant as mentioned in such affidavit, or his successor, in rights" has had continuous, open and undisputed possession of such irrigation works. This is followed by a provision in Section 931 that any transfer to a purchaser in good faith and for a valuable consideration of any such irrigation works after the expiration of ten years from the filing of such affidavit shall vest in such grantee an absolute title in fee simple from the claims of any person whatsoever, to the extent that such works are claimed in said affidavit by the grantor or his predecessor in interest, unless within said ten years any other party claiming an interest in such works has filed with the county clerk wherein his land irrigated by such works is situated an affidavit as mentioned in Section 929.

Section 932 is confined to penal provisions and is immaterial here. Section 933 reads as follows:

"Where the ownership of any irrigation works is disputed, or jointly claimed by any person, partnership or corporation, and the several owners cannot agree upon the amount of interest owned by each, and one or more claimants of such right desire the filing of the affidavit as hereinbefore mentioned, while the other or others do not desire to join therein, one or more such claimants may bring an action in equity in the district court of any county wherein the land or parts of the land affected by such ditch or ditch right is located, and said court shall determine the right of the several claimants to such ditch or ditch right, and determine all the facts necessary in the affidavit hereinbefore prescribed, and such decree shall, after being filed and recorded in the office of the county clerk of the proper county as hereinbefore prescribed, have the same force and effect as the affidvait hereinbefore prescribed; provided, that the provisions of this chapter shall not be construed to relate to water rights, or in any way to conflict with the laws governing the same."

By another provision of the statutes previously enacted it is provided that a certified copy of a judgment or a district court affecting the title to any water right or water system of any kind shall be forwarded upon rendition to the Board of Control by the clerk of such court. (Comp. Stat. 1920, Sec. 918.) And thus a record is provided for by that provision of the statute and by the provision of Section 933 for filing and recording the decree in the county clerk's office, in both of the offices wherein Section 929 requires that the affidavit mentioned therein shall be filed. We think it clear that the provision of 933 for bringing an action in equity prescribes one of the methods for making or having a record made referred to in Section 928 by the words "make a record as herein provided." The action is authorized where the ownership is disputed, or where the irrigation works are jointly claimed and the owners cannot agree upon the amount of the interest owned by each, while

the right to file the affidavit provided for by Section 929 is not limited to cases where the title is in dispute or there is a disagreement as to the extent of a joint owner's interest, but seems to be intended to apply generally where there is no dispute about such matters or no known dispute, since it provides for an affidavit to be joined in, signed and sworn to by all of the parties having an interest in the ditch or ditch right. But the statute, in Section 931, seems also to recognize the right of any other party claiming an interest in the irrigation works to file an affidavit stating his interest within ten years after the filing of the affidavit relating to such works in which he did not join, and evidently to protect a party whose claimed interest in a ditch or other works has not been mentioned or recognized in an affidavit filed under Section 929, relating thereto.

Hence Section 933 covers a situation not specifically, at least, provided for in Section 929, without which, or some other adequate provision covering such a situation, the statute would apparently fail to fully accomplish its declared purpose to prescribe a method for recording and quieting the title to property rights and interests in irrigation works. And without that section construed as above, in connection with the other provisions of the statute, the making of any record of the relative ownership of the parties interested in a jointly owned ditch or other irrigation works might be prevented through the refusal of a joint owner to file or join in the making and filing of the authorized affidavit.

The fact that additional or incidental relief may be asked for and granted in the action, as, for example, in this case, directing the construction of a permanent division box, does not, in our opinion, defeat or affect the character of the action as an authorized method under the statute for having a record made of the relative ownership of each interested party in the irrigation works.

The petition for rehearing will be denied.

*Rehearing denied.*

KIMBALL and BLUME, JJ., concur.